■   ELIZA YOUNG, an Infant, by Her Mother and Natural Guardian, KATHERINE YOUNG, Respondent, v MICHAEL MALLET, as Executor of the Estate of ADELLE D. SIEGLINGER, Deceased, Appellant, et al., Defendant.— Order, Supreme Court, New York County, entered on April 15, 1974, denying defendant-appellant's motion for dismissal of the amended complaint and granting plaintiff's motion to confirm the report of a Special Referee to that effect, reversed, on the law and the facts, plaintiff's motion denied, defendant-appellant's motion granted, and the amended complaint dismissed for lack of jurisdiction over the late, nonresident Adelle Davis, and the action severed as to her, without costs and without disbursements. Adelle Davis was the author of a manuscript entitled "Let's Have Healthy Children" which was printed, published and offered for sale in New York and throughout the United States by the defendant Harcourt, Brace and World, Inc. The infant plaintiff seeks to recover damages for personal injuries allegedly sustained by her through ingestion of generous amounts of vitamin A administered by her mother relying upon the representations and

advice in said book. Adelle Davis died during the pendency of this action. She was a resident and domiciliary of California. Her executor, Michael Mallet, has been substituted as a party defendant in her stead. Defendant Harcourt, Brace and World, Inc., is a New York corporation. In 1951 Davis, in consideration for royalties on sales, assigned her rights in the above-mentioned book to Harcourt. This contract was mailed to Davis from New York by Harcourt, signed by Davis in California and remailed to Harcourt in New York. Special Term directed a reference before a Special Referee to hear and report with respect to the issue of whether author Davis was doing business in New York. The Referee found that Davis was a resident of California, had no agent in New York and she was not doing business in New York. Going beyond the reference, however, he concluded that personal jurisdiction over Davis could be obtained because the amended complaint alleged that she had committed a tortious act in New York within the meaning of CPLR 302 (subd [a], par 2) and that she was deriving "substantial revenue from goods used or consumed or services rendered" in the State of New York within the meaning of CPLR 302 (subd [a], par 3, cl [i]). The Special Referee erred in concluding that though Davis' acts were limited to the authorship of the book in the State of California, the tort is to be deemed to have been committed in New York if the injury occurs here. This view has been rejected by the Court of Appeals in *Feathers v McLucas* (15 NY2d 443, 458–464). (See, also, *Singer v Walker,* 15 NY2d 443, 465–466.) In *Feathers (supra,* p 460), the court said: "The language of paragraph 2 [CPLR 302] conferring personal jurisdiction over a nondomiciliary 'if, in person or through an agent, he * * * commits a tortious act *within* the state'—is too plain and precise to permit it to be read, as has the Appellate Division, as if it were synonymous with 'commits a tortious act *without* the state which causes injury within the state.' The mere occurrence of the injury in this State certainly cannot serve to transmute an out-of-state tortious act into one committed here within the sense of the statutory wording." Nor does the record justify a finding that Davis was receiving substantial revenue from goods used or consumed or services rendered in New York. Books are not used or consumed nor are they services rendered. The royalty income Davis received cannot be traced to sales in New York but to the contract which she executed in California. (See *Matter of Steinbeck v Gerosa,* 4 NY2d 302.) Concur—Lupiano, Capozzoli and Nunez, JJ.; Murphy, J. P., and Yesawich, J., dissent in a memorandum by Yesawich, J., as follows: Yesawich, J. (dissenting). We would affirm for we believe jurisdiction is sustainable under CPLR 302 (subd [a], par 3). Since approximately 1945 when appellant Davis sought a New York publisher for her first book, she has been continuously and systematically active in this State. In the interim she has had a number of books published and printed here by defendant Harcourt, Brace and World, Inc. (Harcourt). These books, which have been offered for sale in New York and throughout the United States, collectively have produced substantial royalties for Davis. Under her contracts with Harcourt she was to receive a percentage of each book sold as royalties. These contracts joined Harcourt and Davis together in the common goal of generating profits for themselves from her writings. It is the purposeful and voluntary furtherance of this common interest, in New York, which gives rise to jurisdictional consequences. In addition to voluntarily sending her manuscripts to New York for publication, she came here to meet with her publisher, to lecture and otherwise exploit her books. Her efforts to promote those sales apparently commenced in 1954, increased measurably through the years and became most intense in the 1970's after this cause of action

accrued. She would send her lecture schedule to Harcourt so that New York bookstores, among others, could be alerted in advance so as to insure that copies of her books would be available for sale. For the obvious purpose of promoting the sale of her books, Harcourt's publicity department arranged for her appearance on three television shows and two radio broadcasts originating in New York. At one time she presumably contracted with a New York corporation to do her own radio show for $25,000. This show was broadcast over a New York station for 13 weeks and at least one show was taped in New York. During these broadcasts an announcer would invariably promote the books she had authored. And when one of her books was released in 1972 she was present in New York for the occasion. Approximately 12 to 15% of Harcourt's sales of adult trade books occur in New York State. Since Davis' books sold as well as any other adult trade book in New York, it is fair to infer that she derived this percentage of her substantial royalties from New York. *Matter of Steinbeck v Gerosa* (4 NY2d 302), does not require a contrary conclusion for our inquiry is directed to determining what activities in New York are sufficient to subject a nonresident to in personam jurisdiction and not to the issue of what activities subject a person to the State's power to levy taxes. (See 24 ALR3d 532, 542, n 17.) Viewing a manuscript as "goods used or consumed or services rendered" may well be unusual, but the Legislature obviously did not deem it completely anomalous "for it was at pains to exclude from coverage" a cause of action for defamation. (Cf. *Buckley v New York Post Corp.,* 373 F2d 175, 178–179.) Having concluded that Davis derived substantial income from New York State, it necessarily follows that the remaining 85–88% of sales made outside New York represents traceable revenue from interstate commerce. By her acts of sending manuscripts to New York knowing that the books would be distributed and advertised here both by herself and Harcourt, she objectively recognized that her activities had potential New York forum consequences.