**Bruce BALL, et al.,**
**Plaintiffs–Appellants,**

v.

**METALLURGIE HOBOKEN–OVER-PELT, S.A., Defendant–Appellee.**

**No. 624, Docket 89–7826.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 11, 1990.

Decided April 27, 1990.

Susan Cummins Doan, Washington, D.C. (Ashcraft & Gerel, Washington, D.C., and Anthony Endieveri, Camillus, N.Y., on the brief), for plaintiffs-appellants.

James L. Chivers, Binghamton, N.Y. (James F. Lee and Paul T. Sheppard, Hinman, Howard & Kattell, Binghamton, N.Y., on the brief), for defendant-appellee.

Before KAUFMAN, MESKILL, and NEWMAN, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal of a diversity case raises several issues concerning the assertion of personal jurisdiction over foreign corporations pursuant to N.Y.Civ.Prac.L. & R. §§ 301 & 302 (McKinney 1972 & Supp. 1990). The issues arise on plaintiffs' appeal from the August 3, 1989, judgment of the District Court for the Northern District of New York (Neal P. McCurn, Chief Judge) dismissing for lack of personal jurisdiction their complaint against defendant Metallurgie Hoboken–Overpelt, S.A. ("MHO"), a metals processing company incorporated in Belgium. The suit sought damages for employment-related injuries allegedly sustained by the plaintiffs as a result of inhaling dust and fumes from cobalt products defectively processed by MHO. After extensive discovery and the filing of cross-motions for summary judgment, the District Court found that plaintiffs had failed to make a *prima facie* showing that MHO does business in New York (section 301) or has acted so as to come within the reach of New York's long-arm statute (section 302). We affirm.

## Background

The plaintiffs in this action include individuals who worked at a tungsten carbide plant operated by Valeron Corporation in DeWitt, New York, prior to the plant's closing in 1982.[1] In their complaint, filed in 1987, they alleged that they developed "cobalt-related Hard Metals Disease" through exposure to cobalt-containing products defectively processed by MHO and used at the plant. Defendant asserted lack of personal jurisdiction in its answer, and, shortly thereafter, moved pursuant to Rule 56(b) for summary judgment on this basis. The District Court held a conference on the motion and granted plaintiffs leave to conduct discovery on the jurisdictional question before filing opposing papers.

---

1. Claims are also brought by the spouses of some of the workers and by the administratrices of two deceased workers. For convenience, we will use "plaintiffs" to mean those employed at the plant.

Plaintiffs conducted discovery for nearly a year. These efforts included document production, extensive interrogatories, requests for admission, and depositions of several officers of MHO and of Afrimet–Indussa, Inc. ("Afrimet"), a New York-based sales organization alleged by plaintiffs to be MHO's agent in New York. Viewing the facts in a light most favorable to the plaintiffs, *Beacon Enterprises, Inc. v. Menzies,* 715 F.2d 757, 762 (2d Cir.1983), the District Court found that discovery revealed the following. Prior to 1982, plaintiffs' employer, Valeron, purchased cobalt products from Afrimet, which sells metal products to customers throughout the United States and Canada and transacts all its business from a New York City office. Afrimet, in turn, buys a variety of metal products processed by MHO and other processing companies. Although there was some dispute as to whether, prior to 1985, any of the metals purchased by Afrimet had been owned by MHO or had merely been processed by MHO, it was undisputed that after 1985 Afrimet purchased metals, including cobalt-containing products, that MHO owned.

As of the time of suit, there was no evidence of common ownership, direct or indirect, between MHO and Afrimet. There was evidence that Afrimet engaged in some solicitation in New York on behalf of MHO and consulted with the latter over efforts to promote and market MHO products in New York. Afrimet typically consulted MHO before contracting with third parties to sell MHO products on a long-term basis. Afrimet held an exclusive sales right for certain of MHO's "cobalt special products," including powder oxides and salts. There was, however, no formal agency agreement between Afrimet and MHO, and the former did not sign contracts on the latter's behalf or make reference to MHO in its own contracts with third parties.

As noted by the District Court, none of the facts summarized above was disputed by the parties. In November 1988, plaintiffs cross-moved for summary judgment on the jurisdictional issue. The District Court held that plaintiffs had failed to make a *prima facie* showing of jurisdiction over the defendant. The District Court ruled that plaintiffs had failed to present facts sufficient to support an inference that Afrimet acted as MHO's New York agent, and thus that MHO was doing business (for purposes of section 301) in New York through Afrimet. The Court also ruled that plaintiffs had failed to make a *prima facie* showing (for purposes of section 302(a)(3)(i)) that MHO "derives substantial revenue from goods used or consumed" in New York. Accordingly, the Court granted MHO's motion for summary judgment and denied plaintiffs' cross motion. This appeal followed.

## Discussion

### I. Procedure for Establishing Personal Jurisdiction

As a preliminary matter, the District Court considered the type of showing a plaintiff must meet to defeat a defendant's claim that a court lacks personal jurisdiction over it. In determining the nature of the plaintiff's obligation, Judge McCurn detected what he took to be conflicting signals from two recent decisions of this Court, *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55 (2d Cir.1985), and *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.,* 751 F.2d 117 (2d Cir.1984). In *Hoffritz,* we said that though a plaintiff bears the burden of establishing jurisdiction over the defendant by a preponderance of the evidence, the plaintiff need make only a *prima facie* showing that jurisdiction exists prior to the holding of an evidentiary hearing. 763 F.2d at 57. In *Beech Aircraft,* we had previously rejected a plaintiff's contention that it need establish only a *prima facie* case of jurisdiction in order to defeat a Rule 12(b)(2) motion and had said that a plaintiff must establish personal jurisdiction by a preponderance of the evidence. 751 F.2d at 120. Judge McCurn extracted from these decisions two approaches: (1) only a *prima facie* showing is needed to defeat a jurisdiction testing motion *before discovery;* (2) jurisdiction must be established by a preponderance of the evidence at a hearing conducted

*after discovery.* The District Judge felt it was unclear which approach applied where a jurisdiction testing motion (either under Rule 12(b)(2) or Rule 56) is presented after discovery but before an evidentiary hearing. He selected the *"prima facie"* approach because *Hoffritz* is the more recent decision and because other district courts in the Circuit appear to be requiring only a *prima facie* showing in these circumstances. *See, e.g., Lana Mora, Inc. v. S.S. Woermann Ulanga,* 672 F.Supp. 125, 126–27 (S.D.N.Y.1987); *Forgash v. Paley,* 659 F.Supp. 728, 729–30 (S.D.N.Y.1987).[2]

■ We agree with Judge McCurn that the nature of the plaintiff's obligation varies depending on the procedural posture of the litigation. Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, *see* Fed.R.Civ.P. 11, legally sufficient allegations of jurisdiction. At that preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations. After discovery, the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d at 57; *Birmingham Fire Insurance Co. v. KOA Fire & Marine Insurance Co.,* 572 F.Supp. 962, 964 (S.D.N.Y. 1983). At that point, the *prima facie* showing must be factually supported.

■ Where the jurisdictional issue is in dispute, the plaintiff's averment of jurisdictional facts will normally be met in one of three ways: (1) by a Rule 12(b)(2) motion, which assumes the truth of the plaintiff's factual allegations for purposes of the motion and challenges their sufficiency, (2) by a Rule 56 motion, which asserts that there are undisputed facts demonstrating the absence of jurisdiction, or (3) by a request for an adjudication of disputed jurisdictional facts, either at a hearing on the issue of jurisdiction or in the course of trial on the merits. If the defendant is content to challenge only the sufficiency of the plaintiff's factual allegation, in effect demurring by filing a Rule 12(b)(2) motion, the plaintiff need persuade the court only that its factual allegations constitute a *prima facie* showing of jurisdiction. If the defendant asserts in a Rule 56 motion that undisputed facts show the absence of jurisdiction, the court proceeds, as with any summary judgment motion, to determine if undisputed facts exist that warrant the relief sought. If the defendant contests the plaintiff's factual allegations, then a hearing is required, at which the plaintiff must prove the existence of jurisdiction by a preponderance of the evidence. *See Cutco Industries Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986); *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.,* 751 F.2d at 120; *United States v. Montreal Trust Co.,* 358 F.2d 239, 242 n. 4 (2d Cir.), *cert. denied,* 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966).[3]

In the pending case, the issue of jurisdiction was submitted by both sides on cross-motions for summary judgment. Since discovery had occurred, Judge McCurn properly examined the record to determine if there were undisputed facts that could resolve the jurisdictional issue.

**2.** At least one other court in this Circuit appears to have had the same difficulty in construing *Hoffritz* and *Beech Aircraft* and to have resolved the problem in the same manner. *See Nordic Bank PLC v. Trend Group, Ltd.,* 619 F.Supp. 542, 563 n. 19 (S.D.N.Y.1985). Another has regarded *Beech Aircraft* as controlling and as establishing that once substantial discovery has been conducted, the trial court may, in its discretion, require the plaintiff to demonstrate jurisdiction by a preponderance of the evidence. *See Grill v. Walt Disney Co.,* 683 F.Supp. 66, 67–68 (S.D. N.Y.1988).

**3.** We believe this formulation is consistent with both *Hoffritz* and *Beech Aircraft. Hoffritz* emphasized that only a *prima facie* showing is required prior to an evidentiary hearing. *Beech Aircraft* emphasized that where such a showing is contested, a plaintiff, after discovery, must prove jurisdiction by a preponderance of the evidence at a pretrial hearing or at trial. In stating that, after discovery, a Rule 12(b)(2) motion could not be defeated simply by presentation of a *prima facie* case, *Beech Aircraft* was focusing on the situation where a *prima facie* factual showing is "contested," 751 F.2d at 120, a situation that requires a hearing.

He did not require the plaintiff to prove its facts by a preponderance of the evidence, since that is a standard of proof appropriate for resolving disputed issues of fact. Judge McCurn was able to determine that the undisputed facts demonstrated the absence of jurisdiction over the defendant. Whether that conclusion was substantively correct is the issue to which we now turn.

## II. Personal Jurisdiction Under New York Law

■ "[T]he amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits," *Arrowsmith v. United Press International*, 320 F.2d 219, 223 (2d Cir.1963) (in banc). Plaintiffs rely on two provisions of New York law, sections 301 and 302(a)(3)(i). Because the District Court correctly held that neither statute sustains the assertion of jurisdiction over MHO in this case, it is not necessary to consider MHO's further contention that assertion of personal jurisdiction over it would violate the Due Process Clause of the Fourteenth Amendment.

■ *A. Section 301—Doing Business.* Section 301 has been authoritatively construed to authorize the exercise of jurisdiction over a foreign corporation if the defendant "does business" in New York in the *"traditional* sense." *Frummer v. Hilton Hotels International, Inc.*, 19 N.Y.2d 533, 536, 281 N.Y.S.2d 41, 43, 227 N.E.2d 851, 53 (emphasis in original), *cert. denied*, 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967).[4] The latter phrase has been consistently interpreted to mean that section 301 applies only when the defendant is "engaged in such a continuous and systematic course of 'doing business' [in New York] as to warrant a finding of its 'presence' " in the jurisdiction. *Id.* (quoting *Simonson v. International Bank*, 14 N.Y.2d 281, 285, 251 N.Y.S.2d 433, 436, 200 N.E.2d 427, 431 (1964)). Occasional or casual business in New York does not suffice under section 301. Since a corporation amenable to juris-

diction under section 301 may be sued in New York on causes of action wholly unrelated to acts done in New York, *see Cohen v. Vaughan Bassett Furniture Co., Inc.*, 495 F.Supp. 849, 850 (S.D.N.Y.1980), its exposure to suit on such a wide range of legal actions requires a showing that it is doing business in New York "with a fair measure of permanence and continuity," *Laufer v. Ostrow*, 55 N.Y.2d 305, 310, 449 N.Y.S.2d 456, 458, 434 N.E.2d 692, 694 (1982).

Plaintiffs concede that MHO exhibits none of the traditional signs of an entity doing business in the state in its own right. MHO owns no real estate in New York, maintains no office, and has no personnel who regularly work in the state. Nevertheless, plaintiffs contend that MHO does business in New York through an agent, Afrimet, which promotes sales, provides service, and essentially does everything MHO could do if it sold products in New York in its own right. In this regard, plaintiffs rely on certain uncontested facts. Afrimet obtains some of its products exclusively from MHO and has an exclusive sales right in the United States for certain MHO cobalt products. Afrimet is able to limit its inventory of MHO products in the United States because MHO permits it to rely on direct shipment of MHO products from Belgium to Afrimet's customers. For such shipments, Afrimet assumes title and risk of loss in Belgium. Afrimet typically retains a commission—three or four percent—of the final market price paid by an Afrimet customer, rather than purchasing from MHO at wholesale and selling at retail. A number of contracts between the two companies contain provisions requiring Afrimet to use its best efforts to promote MHO products, and there is evidence that Afrimet has succeeded in opening up new markets for some MHO metals. Finally, the record shows that Afrimet obtains oral assurances of supply from MHO before entering into long-term contracts with customers, that it frequently refers technical customer inquiries to MHO personnel, and

---

**4.** The statute itself provides: "A court may exercise such jurisdiction over persons, property, or

status as might have been exercised heretofore." N.Y.Civ.Prac.L. & R. § 301 (McKinney 1972).

that occasionally Afrimet and MHO employees attend meetings at each other's facilities and exchange technical and marketing information.

The District Court correctly concluded that these facts were insufficient as a matter of law to support an inference of agency, *Frummer v. Hilton Hotels International, Inc., supra,* by which MHO can be deemed to be doing business in New York because of Afrimet's presence and activities in the state. Prior cases have not specified an exclusive set of considerations that will give rise to such an inference, but among those previously deemed sufficient have been: the existence of an express agency agreement, *Berner v. United Airlines,* 3 N.Y.2d 1003, 170 N.Y.S.2d 340, 147 N.E.2d 732 (1957), actions taken by the New York-based entity with respect to third parties that were binding on the foreign defendant, *Welinsky v. Resort of the World D.N.V.,* 839 F.2d 928 (2d Cir.1988); *Gelfand v. Tanner Motor Tours, Ltd.,* 385 F.2d 116 (2d Cir.1967), *cert. denied,* 390 U.S. 996, 88 S.Ct. 1198, 20 L.Ed.2d 95 (1968), and solicitation by a non-profit New York entity for the benefit of a commonly-owned foreign corporation, *Frummer v. Hilton Hotels International, Inc., supra.* Jurisdiction has been denied where the corporate entities were truly separate, where the foreign defendant relinquished title and risk of loss outside the state, and where promotion of the defendant's product by the in-state corporation constituted "mere solicitation." *Delagi v. Volkswagenwerk AG,* 29 N.Y.2d 426, 328 N.Y.S.2d 653, 278 N.E.2d 895 (1972); *Fordyce v. Round Hill Developments, Ltd.,* 585 F.2d 30 (2d Cir. 1978). We agree with the District Court that the latter cases are more accurate analogies for the relationship between MHO and Afrimet.

Although plaintiffs have alleged that Afrimet's sales contracts with customers, such as Valeron, are binding on MHO, they have produced no evidence—by way of document or otherwise—to support this allegation. Such bare legal allegations may be sufficient to withstand a 12(b)(2) motion, but, without factual support, fail to make a *prima facie* showing at the summary judgment stage, once discovery has occurred. Furthermore, the fact that Afrimet is paid on a commission basis does not, by itself, render it MHO's agent, *see Cohen v. Vaughan Bassett Furniture Co., Inc., supra,* especially since Afrimet bears the risk of loss associated with transporting goods to customers and enters into contracts with those customers only in its own behalf. The existence of an exclusive sales contract with respect to a limited number of products, sharing of technical and marketing information, and limited solicitation on behalf of both companies do not demonstrate that the relationship between Afrimet and MHO is more than that of major distributor to manufacturer, *see McShan v. Omega Louis Brandt et Frere, S.A.,* 536 F.2d 516, 517–18 (2d Cir.1976); *Mayer v. Josiah Wedgwood & Sons, Ltd.,* 601 F.Supp. 1523, 1529 n. 5 (S.D.N.Y.1985). The relationship is not sufficient to support plaintiffs' claim that MHO is doing business in New York through Afrimet.

**B.** *Section 302(a)(3)(i)—Long-arm Jurisdiction.* The District Court also rejected plaintiffs' contention that jurisdiction may be asserted under section 302(a)(3)(i).[5] The Court ruled that 1987—the year the complaint was filed—was the proper point in time for examining whether MHO "derives substantial revenue from goods used or consumed" in New York, that substantial revenue in either an abso-

---

**5.** The statute provides:
As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, ... who in person or through an agent:

\* \* \* \* \* \*

3. commits a tortious act without the state causing injury to person or property within the state ..., if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state....

N.Y.Civ.Prac.L. & R. § 302(a)(3)(i) (McKinney 1972).

lute or relative sense will support long-arm jurisdiction, *see Allen v. Canadian General Electric Co. Ltd.*, 65 A.D.2d 39, 410 N.Y.S.2d 707 (3d Dep't 1978), *aff'd on opinion below*, 50 N.Y.2d 935, 431 N.Y. S.2d 526, 409 N.E.2d 998 (1980), and that plaintiffs failed to make a *prima facie* showing that metal products sold by MHO to Afrimet in 1987 were "used or consumed" in New York. On appeal, plaintiffs contend that it was sufficient to show that sales between MHO and Afrimet totalled 20 to 24 million dollars, or one percent of MHO's total sales revenue; they also contend that New York law does not require them to trace the goods sold by a large corporation in order to identify the place where the goods are ultimately used or consumed. Defendant maintains that long-arm jurisdiction was lacking even if 1987 sales are relevant or, in the alternative, that predicating jurisdiction on sales in 1987 even though the injuries occurred prior to 1982—a time when MHO merely processed but did not sell metal products— would render the assertion of jurisdiction unforeseeable and therefore a violation of due process.

We find it unnecessary to consider defendant's due process argument because we agree that even if the statute is construed in a manner most favorable to the plaintiffs, there has been no *prima facie* showing of jurisdiction in this case. The few cases on point indicate that in order to sustain jurisdiction under section 302(a)(3)(i), plaintiffs must demonstrate more than substantial revenue from sales to a New York entity, they must make some showing that the associated goods are "used or consumed" in New York. For example, in *Young v. Mallet*, 49 A.D.2d 528, 529, 371 N.Y.S.2d 1, 3 (1st Dep't 1975) (per curiam), the Court dismissed a suit against an out-of-state author, observing that "[b]ooks are not used or consumed nor are they services rendered." *See also Buckley v. New York Post Corp.*, 373 F.2d 175 (2d Cir.1967) (construing identical phrase in Connecticut's long-arm statute). In *Birmingham Fire Insurance Co. v. KOA Fire & Marine Insurance Co.*, 572 F.Supp. at 966, the Court ruled that in

order to survive summary judgment the plaintiff could not allege merely that defendant obtained substantial revenue from reinsuring New York risks; it needed to produce some "hard evidence" regarding which New York risks were involved and how much revenue had been obtained.

In this case, plaintiffs elicited deposition testimony from an officer of MHO's sales department that sales to Afrimet were between 20 and 24 million dollars, or one percent of MHO's total 1987 revenue. They presented no evidence, however, as to what portion of this figure was associated with products eventually sold to plants located in New York, despite undisputed evidence that Afrimet had a client base throughout the United States and Canada. Moreover, this is not a case in which plaintiffs' efforts to marshal evidence on this point were frustrated by MHO's or Afrimet's inability or unwillingness to supply sales information. Even though discovery revealed that Afrimet often shipped products directly from Belgium to customers, plaintiffs failed to inquire what portion of these sales resulted in products delivered in New York. Plaintiffs' reliance on *Allen v. Canadian General Electric Co. Ltd.*, 65 A.D.2d 39, 410 N.Y.S.2d 707 (3d Dep't 1978), *aff'd*, 50 N.Y.2d 935, 431 N.Y.S.2d 526, 409 N.E.2d 998 (1980), is unavailing. Although the Court in *Allen* sustained jurisdiction without expressly finding that defendant's products had been used or consumed in the state, there is no indication from the opinion that the issue was disputed. Moreover, it may be that for certain consumer products, such as the tea kettles in *Allen*, use or consumption in New York may be inferred from sales to New York retailers. That can hardly be the case, however, for industrial products, a large percentage of which may never have even entered the state.

The judgment of the District Court is affirmed.