**COMBUSTION ENGINEERING, INC., Plaintiff,**

v.

**NEI INTERNATIONAL COMBUSTION, LIMITED, Defendant.**

**Civ. No. 5–92–104 (WWE).**

United States District Court, D. Connecticut.

Aug. 17, 1992.

---

John M. Callagy, Kelley, Drye & Warren, New York City, for plaintiff.

Raymond L. Sweigart, Roberts, Gaillard, Kambas, Cousins & Sweigart, Stamford, Conn., for defendant.

## RULING ON DEFENDANT'S MOTION TO DISMISS OR TRANSFER

EGINTON, District Judge.

### FACTS

Defendant NEI International Combustion Limited ["NEI"] moves, pursuant to Fed.R.Civ.P. 12(b)(2), to dismiss the complaint of Plaintiff Combustion Engineering, Inc., ["CEI"] for lack of personal jurisdiction, and in the alternative moves, pursuant to Fed.R.Civ.P. 12(b)(3) and 28 U.S.C. § 1404(a), to transfer this action to the Northern District of Georgia. Motion papers reveal the following facts.

CEI is a Delaware corporation with its principal place of business in Stamford, Connecticut. NEI is a corporation organized under the laws of the United King-

dom with its principal place of business in Derby, England. CEI and NEI have for several years been party to a licensing agreement [the "Agreement"] allowing NEI to use CEI technology to manufacture power station equipment. In the instant action, CEI alleges NEI has breached the Agreement and has committed unfair trade practices and patent infringement by using information obtained through the Agreement to solicit CEI customers in America. CEI seeks a preliminary injunction prohibiting NEI from using this information.

NEI claims that it lacks the contacts with the state of Connecticut necessary to make it subject to the jurisdiction of this court, or in the alternative that this action should be transferred due to improper venue. Oral argument on the motion was heard on May 13, 1992. For the following reasons, NEI's motion to dismiss or transfer will be denied.

## DISCUSSION

■ Where the personal jurisdictional issue is in dispute, the nature of a plaintiff's obligation varies depending on the procedural posture of the litigation. Prior to discovery, a plaintiff may defeat a jurisdictional challenge by pleading legally sufficient allegations of jurisdiction in good faith. After discovery, a plaintiff must submit an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant. *Ball v. Metallurgie Hoboken–Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990).

■ Defendant argues that because the court heard oral argument on the jurisdictional issue, plaintiff should now be required to prove jurisdiction by a preponderance of the evidence pursuant to *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981). Defendant misinterprets the holding in *Marine Midland.* While the *Marine Midland* court did hold that after a full evidentiary hearing a plaintiff would have to prove jurisdiction by a preponderance of the evidence, the court also held that a district court "has consider-

able procedural leeway" in deciding a pretrial jurisdictional motion, and that a district court need not conduct an evidentiary hearing at all. *Marine Midland,* 664 F.2d at 904. While limited testimony was heard at the May 13 hearing regarding the motion to transfer, it was not a full blown evidentiary hearing. Therefore, this court will follow the *Ball* standard and tie plaintiff's burden to the early stage of discovery.

■ Two conditions must be met for a court to assert in personam jurisdiction over a foreign corporation. First, there must be a jurisdictional statute that reaches the conduct of the defendant. *Fuehrer v. Owens–Corning Fiberglas Corp.,* 673 F.Supp. 1150, 1152 (D.Conn.1986). A district court sitting in diversity must look to the forum state to determine jurisdiction. *Arrowsmith v. United Press International,* 320 F.2d 219, 231 (2d Cir.1963) (en banc). The relevant statute is the Connecticut long-arm statute, Conn.Gen.Stat. § 33–411.

■ In addition, the existence of jurisdiction cannot exceed constitutional due process limitations. Such limitations require that a nonresident corporate defendant have "minimum contacts" with the forum state such that it would reasonably anticipate being haled into court there. *World–Wide Volkswagen Corporation v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Maintenance of the suit in the forum state cannot "offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940).

### A) The Connecticut Long–Arm Statute

The Connecticut long-arm statute, Conn. Gen.Stat. § 33–411, allows a Connecticut court to assert jurisdiction over a foreign corporation if that corporation transacts business in the state. *See* § 33–411(b). CEI concedes in its papers that NEI does

not transact business in Connecticut under § 33–411(b).

Conn.Gen.Stat. § 33–411(c) allows a court to assert jurisdiction over a foreign corporation that does not transact business in Connecticut, provided the corporation has committed certain acts which have a sufficient nexus to the state. CEI concedes in its papers that NEI has committed no tortious acts in Connecticut. In addition, CEI has produced no evidence that NEI has solicited business in Connecticut or has manufactured goods which were consumed or used in Connecticut. To the extent relied upon by CEI, § 33–411(c) provides:

> Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state....

Conn.Gen.Stat. § 33–411(c) (1992).

■ Once the existence of a contract is established, the inquiry under § 33–411(c)(1) is effectively incorporated into the constitutional due process analysis, because the reach of § 33–411(c)(1) extends to constitutional limits. This court has held that § 33–411(c)(1) "must be read to authorize the assertion of jurisdiction in every instance where a cause of action arises out a contract made or to be performed [in Connecticut] so long as there are sufficient total contacts to meet constitutional requirements." *Electric Regulator Corp. v. Sterling Extruder Corp.*, 280 F.Supp. 550, 556 (D.Conn.1968).

CEI alleges that the Agreement at issue here, which was entered into by CEI and NEI's predecessor-in-interest, Clarke Chapman–John Thompson, Ltd. ["Chapman"], in 1974, subjects NEI to the jurisdiction of this court under § 33–411(c)(1).

CEI is a world leader in boiler technology, and has from time to time entered into licensing agreements with companies abroad allowing them to use CEI technology to manufacture and sell power station equipment. In 1974 CEI entered into the Agreement with Chapman, and in 1988 Chapman assigned all of its interest under the Agreement to NEI. The Agreement gives NEI a license to manufacture and sell CEI equipment in select countries other than the United States.

■ CEI asserts that the research and development of the technical knowledge provided to NEI under the Agreement was carried out by CEI in Connecticut, and that the royalty payments NEI made pursuant to the Agreement were made to CEI in Connecticut. For a court to assert jurisdiction over a foreign corporation pursuant to § 33–411(c)(1), it is clear that the underlying contract must contemplate or encompass some contact with Connecticut. However, that contact need not always be by the defendant:

> The language of § 33–411(c)(1) does not expressly require contemplated performance in this state by the party over whom jurisdiction is sought.... There is no indication ... that the Connecticut legislature intended that the language "to be performed in this state" should be given a limited construction to require performance in this state by the party over whom jurisdiction is sought. It would not be appropriate, therefore, for this Court to impose such a limitation on the statute.

*Bowman v. Grolsche Bierbrouwerij B.V.*, 474 F.Supp. 725, 731–32 (D.Conn.1979) (citations omitted). The *Bowman* court went on to hold that where a contract "clearly contemplated and required performance" in Connecticut by the plaintiff alone, § 33–411(c)(1) subjected the defendant to suit. *Bowman*, 474 F.Supp. at 732.

■ Plaintiff has submitted affidavits from current and former CEI employees detailing the activities of NEI personnel in Connecticut. In particular, the affidavits of John A. Eggers and Samuel S. Blackburn detail several visits to CEI offices by NEI personnel during the 1980s, and claim that the purpose of such visits was to con-

duct training and information exchanges relating to the Agreement. NEI argues in response that in fact its officers made relatively few trips to Connecticut over a two-decade period, and that several of the visits enumerated in the CEI affidavits were pursuant to business activities unrelated to the Agreement.

The court finds that, at this early stage of the litigation, CEI has met its burden of showing that Chapman, and later NEI, entered into a contract with CEI "to be performed in this state" under § 33–411(c)(1) and the case law interpreting that section. Where, as here, the defendant seeks through a Rule 12(b)(2) motion to challenge only the sufficiency of plaintiff's factual allegation, "the plaintiff need persuade the court only that its factual allegations constitute a *prima facie* showing of jurisdiction." *Ball v. Metallurgie Hoboken–Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990). Plaintiff has made such a showing.

*B) Due Process Requirements*

■ It is a basic principal of due process and federalism that a state may not "make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties or relation." *International Shoe Co., v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95 (1945). The requisite "minimum contacts" necessary to subject a defendant to suit are not determined through a mechanical or quantitative evaluation of the defendant's activities in the forum, but rather through a qualitative examination of the relationship among the defendant, the forum, and the litigation. *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977).

■ This evaluation centers on the question of whether the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). A commercial actor need not have a physical presence in a state to establish the necessary minimum contacts, so long as the actor's efforts are "purposefully directed" towards the state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985).

■ However, when a corporation contracts with an out-of-state party, the contract alone cannot establish sufficient minimum contacts in the other party's home forum. The key is not the contract itself but the attendant circumstances—the "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing, that must be evaluated." *Burger King,* 471 U.S. at 478–79, 105 S.Ct. at 2185–86.

■ Both parties exhaustively compare the instant case to *Burger King,* where jurisdiction of a Florida court was found to exist over a Michigan resident who contracted with a Florida corporation. Among other arguments, CEI notes that NEI visited Connecticut far more than did the *Burger King* defendant, while NEI points out that the franchise agreement at issue in *Burger King* had a Florida choice of law provision while the instant Agreement has no mention of Connecticut law. Such comparisons are helpful, but because the due process inquiry rests upon the totality of the circumstances rather than any mechanical criteria, they are not dispositive of the issue at hand.

■ The key question remains whether "defendant's conduct and connections with the forum state are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). When NEI succeeded Chapman as a licensee under the Agreement, it in effect contracted with a Connecticut corporation. *Burger King* teaches that this alone is insufficient, but that contemplated future consequences of the contract and the parties actual course of dealing should also be evaluated.

■ As noted above, the affidavits submitted by CEI allege that NEI employees traveled to Connecticut on several occasions for training and information exchanges pursuant to the Agreement. Once again, these affidavits sustain CEI's burden at this early stage of the litigation. The central claim by CEI in this case is that NEI has, through the Agreement, obtained boiler technology from CEI and is now using that technology in violation of the Agreement. When a licensee contracts to obtain a technology-based license, and makes trips to the licensor's home-state to obtain such technology, should such technology be used by the licensee in violation of the contract it is presumptively reasonable for the licensee to be called to account in the home-state for any resultant injuries to the licensor. *See Burger King*, 471 U.S. at 480, 105 S.Ct. at 2186.

Because the CEI affidavits make a *prima facie* showing that NEI's activities in Connecticut relating to the Agreement were not "random," "fortuitous" or "attenuated," *see Burger King*, 471 U.S. at 480, 105 S.Ct. at 2186, the court finds that subjecting NEI to this court's jurisdiction does not violate due process. To the extent NEI alleges a due process violation based on the substantial inconvenience of litigating this case in Connecticut, rather than in Georgia, it will be discussed below in the context of a motion to transfer. *See Burger King*, 471 U.S. at 477 & n. 20, 105 S.Ct. at 2184 & n. 20.

*C) Motion to Transfer*

■ The minimum requirements inherent in the concept of "fair play and substantial justice" may defeat the reasonableness of jurisdiction even if the defendant has the requisite minimum contacts with the forum. However, where minimum contacts have been established the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2184.

■ Once it is established that a defendant has purposefully established minimum contacts with the forum state, the court must examine other factors to determine whether the assertion of jurisdiction comports with "fair play and substantial justice." *International Shoe Co., v. Washington*, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945). Such factors include the relative burdens on plaintiff and defendant of litigating the suit in this or another forum, the forum state's interest in adjudicating the dispute, and the interstate judicial system's interest in efficient resolution of controversies. *Burger King*, 471 U.S. at 476–77, 105 S.Ct. at 2184–85.

■ In cases where these factors suggest that subjecting the defendant to suit in the forum would be unfair, a possible solution short of finding jurisdiction unconstitutional is to order a change of venue pursuant to 28 U.S.C. § 1404(a). *Burger King*, 471 U.S. at 477 & n. 20, 105 S.Ct. at 2184 & n. 20. Motions to transfer pursuant to § 1404(a) are addressed to the discretion of the court, with due consideration afforded to factors such as the convenience of the parties and witnesses and the ease of access to sources of proof. *S.E.C. v. Electronics Warehouse, Inc.*, 689 F.Supp. 53, 74 (D.Conn.1988), *aff'd, S.E.C. v. Calvo*, 891 F.2d 457 (2d Cir.1989), *cert. denied, Calvo v. S.E.C.*, 496 U.S. 942, 110 S.Ct. 3228, 110 L.Ed.2d 674 (1990). The burden is on the defendant, when it is the moving party, to establish that there should be a change of forum. *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978), *cert. denied, Pro Arts, Inc., v. Factors Etc., Inc.*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979).

■ This court considers a key factor in determining the appropriate venue to be the convenience of witnesses. *See Computer Assistance, Inc. v. Morris*, 564 F.Supp. 1054, 1057 (D.Conn.1983). At oral argument, the court informed the parties that the location of witnesses and documents which were to be produced at trial would have paramount importance in deciding the proper venue. It is undisputed that many documents will be produced from London, England and Windsor, Connecticut. In addition, NEI has already noticed

depositions for several CEI employees in Connecticut.

As of the date of oral argument, NEI had been awarded contracts to supply boilers to two utilities, both located in Georgia. NEI argues that because these initial American contracts were with Georgia companies, the gravamen of CEI's complaint centers on Georgia, and it would be most convenient for witnesses to be summoned to a Georgia court. However, CEI notes that NEI has engaged in negotiations regarding NEI technology with utilities in Illinois, Ohio, Indiana and Maryland, and has had some dialogue regarding NEI boilers with at least twenty other utilities in some fifteen states. CEI counsel John M. Callagy submitted an affidavit evincing an intent on CEI's part to call at least some of the employees of these utilities as non-party witnesses.

The court finds that there is no single forum that will be convenient to a major portion of the witnesses likely to be called in this case. The myriad locations of the witnesses do not favor either Connecticut or Georgia. *See Gibbs & Hill, Inc. v. Harbert Int'l, Inc.,* 745 F.Supp. 993, 997 (S.D.N.Y.1990). Therefore, the court will defer to the right of the plaintiff to choose its forum. *See Electronics Warehouse,* 689 F.Supp. at 74. Defendants motion to transfer is denied. Should developments in this case dictate that the convenience of witnesses will be served by a transfer to Georgia, NEI may renew its motion at the close of discovery.

### CONCLUSION

For the reasons set forth above, Defendant NEI International Combustion Limited's motion to dismiss or transfer is DENIED without prejudice to renew at the close of discovery.

SO ORDERED.