**TRAFFIX, INC. f/k/a Quintel Entertainment, Inc.,**
**Plaintiff,**

v.

**Patrick HEROLD Defendant.**

**No. 02 CIV. 8937(WC).**

United States District Court,
S.D. New York.

May 2, 2003.

Feder, Kaszovitz, Isaacson, Weber, Ska-la, Bass & Rhine, LLP, New York City (Bruce Robbins, of Counsel), for plaintiff.

Roosevelt, Benowich & Lewis, LLP, White Plains, NY (Leonard Benowich, of Counsel), for defendant.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Traffix, Inc. ("Traffix") brings this action against defendant, Patrick Herold ("Herold"), President of Federal Transtel, Inc. ("FTT"). Plaintiff alleges conversion by defendant of monies belonging to plaintiff and count two of the Complaint sets forth a claim for money had and received. Defendant seeks dismissal of the Complaint (1) pursuant to FED. R. CIV. P. 12(b)(2) on the ground of lack of personal jurisdiction, (2) for lack of standing to assert these claims, and (3) pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons that follow, defendant's motion is granted.

## BACKGROUND

The following statement of facts is based on the allegations in plaintiff's Complaint, which, for the purposes of this motion, we assume to be true.[1] Traffix is a Delaware corporation with its principal place of business in Pearl River, New York. (Complt. ¶ 1.) At all relevant times, Traffix was a direct marketing company marketing various products and services to consumers. Among the products and services which Traffix marketed were a "psychic club" and telephone voice mail services. (*Id.* ¶ 8.) FTT, a Georgia corporation with its principal place of business in Birmingham, Alabama, is engaged in providing, *inter alia,* billing and collection services for marketing firms like Traffix. (*Id.* ¶ 9.) In or about December 1996, Traffix and FTT entered into an agreement pursuant to which FTT, among other things, provided Traffix with billing and collection services with respect to Traffix's programs. Pursuant to the agreement, (i) FTT was obligated to remit to Traffix the amounts it collected on Traffix's behalf, less certain fees and adjustments; (ii) FTT was allowed to hold certain monies collected on Traffix's behalf as a reserve against future chargebacks against those monies; and (iii) FTT was allowed to hold reserve monies for twelve months only, and was required to remit such reserve monies to Traffix, less the amount of actual chargebacks against such reserve in that time. (*Id.* ¶ 11.)

According to plaintiff, the monies collected by FTT from Traffix's customers were collected on Traffix's behalf and constitute Traffix's property. At all relevant times defendant was the President of FTT and was in charge of and supervised FTT's operations, including the collection and disbursement of Traffix's billings. (*Id.* ¶ 14.) From in or about December 1996 to December 2001, FTT collected Traffix's billings, and regularly reported that it was holding reserves for and on behalf of Traffix. (Complt. ¶ 15.) On or about November 30, 2001, Traffix obtained a judgment against FTT in the amount of $1,029,938 which related to FTT's failure to timely remit certain portions of the reserves which were supposedly being held by it for and on behalf of Traffix. At approximately the same time, FTT filed for protection under the Bankruptcy Code. Plaintiff charges that at the time of the bankruptcy filing, Traffix's reserve accounts at FTT had been looted by defendant and did not

---

1. On a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all of the well pleaded facts as true and consider those facts in the light most favorable to the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on* other grounds, *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Hertz Corp. v. City of New York,* 1 F.3d 121, 125 (2d Cir.1993); *In re AES Corp. Sec. Litig.,* 825 F.Supp. 578, 583 (S.D.N.Y.1993) (Conner, J.).

contain Traffix's funds. (*Id.* ¶ 18.) Accordingly, Traffix has commenced this action against defendant seeking to recover those funds which he misappropriated and or helped others to misappropriate.

## DISCUSSION

### I. *Personal Jurisdiction*

■ Plaintiff bears the burden of establishing this Court's jurisdiction over the defendant. *See Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.1996). The nature of the plaintiff's obligation, however, "varies depending on the procedural posture of the litigation." *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.1990). Prior to discovery, a motion to dismiss pursuant to Rule 12(b)(2) may be defeated if the plaintiff's complaint and affidavits contain sufficient allegations to establish a prima facie showing of jurisdiction. *See id.* Moreover, the court must assume the truth of the plaintiff's factual allegations. *See id.*

In diversity actions, the extent of the Court's personal jurisdiction is governed by New York law, as circumscribed by the Due Process Clause of the United States Constitution. *See Metro. Life Ins.*, 84 F.3d at 567; *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir.1963). Although plaintiff relies on several provisions in New York's long-arm statute to obtain personal jurisdiction over defendant, we conclude that plaintiff has established jurisdiction under the "transacting business" theory pursuant to N.Y.C.P.L.R. § 302(a)(1). That section provides for personal jurisdiction over a non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state[.]" *Id.* The "transacting business" requirement of § 302(a)(1) is a lesser showing than the "doing business" requirement of § 301. *See McGowan v. Smith*, 52 N.Y.2d 268, 437 N.Y.S.2d 643, 419 N.E.2d 321, 323 (1981). However, under § 302(a)(1), there must also be "some articulable nexus between the business transacted and the cause of action sued upon." *Id.* Further, "there must have been some 'purposeful activity' within the State that would justify bringing the nondomiciliary defendant before the New York courts." *Id.* at 322.

■ Turning to defendant's contacts with New York, there were at least three occasions when defendant visited with Andrew Stollman, President of Traffix at Traffix's New York office in Pearl River. (Stollman Aff. ¶ 6.) During two of those meetings, defendant and Mr. Stollman discussed the ongoing business relationship between Traffix and FTT. According to Mr. Stollman, the purpose of these discussions was to maintain an amicable business relationship between Traffix and FTT, and to insure efficient and complete performance of the Traffix/FTT agreement by both sides.[2] (*Id.*) "Meetings which are partially social in nature, as well as meetings which merely create the likelihood of a more solid business relationship are a sufficient basis for the exercise of in personam jurisdiction." *Accord Nee v. HHM Fin. Servs., Inc.*, 661 F.Supp. 1180, 1184 (S.D.N.Y.1987); *Rates Tech., Inc. v. Diorio*, 626 F.Supp. 1295, 1297 (E.D.N.Y.1986); *Interface Biomedical Labs. v. Axiom Med.*, 600 F.Supp. 731, 737 (E.D.N.Y. 1985). We find that the Stollman–Herold meetings "create[d] the likelihood of a more solid business relationship" between plaintiff and defendant and thus constitute

---

**2.** Defendant also visited Traffix in its New York office after Traffix was granted summary judgment against FTT. During this meeting defendant had discussions with Mr. Stollman and other Traffix personnel regarding settlement of the judgment. (Stollman Aff. ¶ 7.)

a transaction of business under § 302(a)(1). *See Silverman v. Worsham Bros. Co., Inc.*, 595 F.Supp. 959, 961 (S.D.N.Y.1984) ("In determining whether a defendant 'transacts business' under CPLR 302(a)(1) a court may look to whether meetings in New York 'appear to be important in defining the terms of the final contract and structuring the relationship among the parties.'"); *Cantor Fitzgerald, L.P. v. Peaslee*, 88 F.3d 152 (2d Cir.1996) (noting that meetings held in New York following formation of contractual relationship may confer personal jurisdiction over defendant where meetings are essential to business relationship). Moreover the several telephone negotiations conducted from New York between defendant and Mr. Stollman, (Stollman Aff ¶ 61.), coupled with the above meetings warrant the exercise of personal jurisdiction over defendant under § 302(a)(1). *See CT Chem., Inc. v. Horizons Int'l, Inc.*, 106 F.R.D. 518 (S.D.N.Y. 1985) (sustained telephone negotiations coupled with discussions in New York between the parties regarding the subject matter of the executed contract qualifies as "transacting business").

## II. *Standing*

█ Having established personal jurisdiction over defendant, we now examine whether plaintiff has standing to assert its claims. Defendant argues that plaintiff's claims are property of the FTT bankruptcy estate and therefore plaintiff lacks the requisite standing to assert such claims in this Court. (Def. Mem. Supp. Mot. Dismiss at 13.) We disagree. This very issue was addressed by the Second Circuit in *Cumberland Oil Corp. v. Thropp*, 791 F.2d 1037, 1042 (2d Cir.1986.) There the bankrupt corporation's right to recover misappropriated corporate assets was vindicated by the bankruptcy trustee's suit against the individual defendants. *Id.* The court noted however that the plaintiff/creditor was not claiming a right on its own or the bankrupt corporation's behalf to recover misappropriated assets. Instead, it had alleged that it suffered damages because of the President's intentional act of stripping the corporation of its assets. According to the court, the right to recover for this alleged tort belonged to the plaintiff/creditor and not the corporation. The cause of action was deemed to be the plaintiff's property, not part of the bankruptcy estate. *Id.* Similarly, in the instant case, plaintiff is claiming damages as a result of defendant's actions in appropriating plaintiff's funds for himself. (Complt. ¶ 21.) Consequently, plaintiff has the requisite standing to pursue these claims.

## III. *12(b)(6) Relief*

Defendant seeks dismissal of plaintiff's complaint for failure to state a claim upon which relief may be granted. On a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all of the well pleaded facts and consider those facts in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir.1993); *In re AES Corp. Sec. Litig.*, 825 F.Supp. 578, 583 (S.D.N.Y.1993). Furthermore, in assessing the legal sufficiency of a claim, the court may consider not only the facts alleged in the complaint, but also any document attached as an exhibit to the complaint or incorporated in it by reference. *See* FED. R. CIV. P. 10(c); *De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 69 (2d Cir.1996).

On such a motion, the issue is "whether the claimant is entitled to offer evidence to support the claims." *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683. A complaint should not

be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Padavan v. United States,* 82 F.3d 23, 26 (2d Cir.1996) (quoting *Hughes v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)). Generally, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.34[1][b] (3d ed.1997); *see also Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1088 (2d Cir.1995). Allegations that are so conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains, are insufficient as a matter of law. *See Martin v. New York State Dep't of Mental Hygiene,* 588 F.2d 371, 372 (2d Cir.1978).

### IV. *Conversion*

Initially, we reject defendant's argument that plaintiff's conversion claim is time-barred. Although the Complaint alleges that the conversion occurred as early as 1997, plaintiff appears to claim that the conversion continued through December 2001. (Complt. ¶ 15.) This action was commenced on November 8, 2002, within the applicable 3–year statute of limitations and the Complaint may not be dismissed on this ground. *See In re FYM Clinical Lab., Inc.,* 1997 WL 666238, *4 (S.D.N.Y. Oct.27, 1997) (counting the 3–year statute of limitations period as running from the last alleged act of conversion).

 Turning to the substance of the conversion claim, plaintiff alleges that defendant "systematically raided Traffix's collection and reserve accounts at FTT and appropriated for himself, or others acting in concert with him, most if not all of such funds." (Complt.¶ 21.) Conversion is "an unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Peters Griffin Woodward, Inc. v. WCSC, Inc.,* 88 A.D.2d 883, 452 N.Y.S.2d 599, 600 (N.Y.App.Div.1982). New York law recognizes an action for conversion of money, but requires the plaintiff to have "ownership, possession or control of the money" before its conversion. *Aramony v. United Way of America,* 949 F.Supp. 1080, 1086 (S.D.N.Y.1996). Plaintiff's claim fails to state a cognizable claim for conversion. Plaintiff never had "ownership, possession or control of the money" it alleges has been converted because any ownership interest plaintiff had is by virtue of the contract with FTT and plaintiff is claiming that FTT's breach of that contract deprived it of that interest.[3] *See ESI, Inc. v. Coastal Power Prod. Co.,* 995 F.Supp. 419 (S.D.N.Y.1998) (Conner J.) While plaintiff may have had an equitable right to the monies FTT collected on its behalf pursuant to their agreement, a conversion action cannot be predicated on an equitable interest or a mere breach of contractual obligation. *See Dyckoff v. Prime Designs Licensing, Ltd.,* 1984 WL 567 (S.D.N.Y. July 10, 1984) (citing *Laurent v. Williamsburgh Sav. Bank,* 28 Misc.2d 140, 137 N.Y.S.2d 750, 754–55 (N.Y.Sup.1954); *Independence Discount Corp. v. Bressner,* 47 A.D.2d 756, 365 N.Y.S.2d 44, 46 (N.Y.App.Div.1975)). Consequently, plaintiff's claim for conversion is dismissed.[4]

---

**3.** As plaintiff summarizes in its memorandum of law, "... put simply, FTT breached the Agreement which required it to remit the collected monies to Traffix because Herold (and possibly others) misappropriated those monies." (Pl. Mem. Opp. Mot Dismiss at 10.)

**4.** The Court notes that plaintiff's claims against defendant sound more like the predi-

## V. *Money Had and Received*

In New York, the claim of money had and received is an equitable remedy appropriate where (1) defendant received money belonging to plaintiff, (2) defendant benefitted from the receipt of the money, and (3) under principles of equity and good conscience, defendant should not be permitted to keep the money. *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank*, 731 F.2d 112, 125 (2d Cir.1984). As discussed above, there is no indication that plaintiff had an ownership interest in the funds it claims defendant misappropriated. For this reason, the claim for money had and received is dismissed. *See Mia Shoes, Inc. v. Republic Factors Corp.*, 1997 WL 525401, at *2 (S.D.N.Y. Aug.21, 1997); *Grain Traders, Inc. v. Citibank, N.A.*, 960 F.Supp. 784, 793 (S.D.N.Y.1997).

### CONCLUSION

For the reasons stated above, defendant's motion to dismiss the Complaint is granted, and the Complaint will be dismissed unless plaintiff amends it within thirty days from the date of this decision to state an appropriate claim (e.g., tortious interference), for which plaintiff can establish a factual basis.

SO ORDERED.

cate for a claim of tortious interference with the agreement between plaintiff and FTT. Plaintiff may therefore, as requested in its memorandum of law, have leave to amend the Complaint to assert this claim. *See Ricciuti v.*

*N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir.1991) (indicating that the district courts should ordinarily grant leave to amend whenever they dismiss complaints pursuant to Rule 12(b)(6)).