## MICHAEL SIMEONE *v.* FEDERAL PRESS COMPANY

| Superior Court | Judicial District of New Haven | File No. 228759 |
|---|---|---|

Memorandum filed September 27, 1984

*Heffernan, Leary & Gibson,* for the plaintiff.
*O'Brien & Tanski,* for the defendant.

HIGGINS, J. The plaintiff brings this products liability action against the Federal Press Company, a corporation organized under the laws of the state of Indiana. The plaintiff was injured while operating an allegedly defective machine manufactured by the defendant. The injury occurred in Connecticut at Echlin, Inc., the plaintiff's place of employment. The press was sold to Echlin by the Beisel Machinery Company.

The defendant moves to dismiss this action claiming that the court lacks personal jurisdiction over a foreign corporation which does not transact business in this state and is not subject to suit by reason of Connecticut's long arm statute. General Statutes § 33-411.

A motion to dismiss is the proper vehicle to assert the court's lack of jurisdiction over the defendant. Practice Book § 143. When the motion does not seek to introduce facts outside of the record it admits all well pleaded facts, the complaint being construed most favorably to the plaintiff. *American Laundry Machinery, Inc.* v. *State,* 190 Conn. 212, 217, 459 A.2d 1031 (1983). However, "[w]hen a motion to dismiss for lack of personal jurisdiction raises a factual question which is not determinable from the face of the record, the burden of proof is on the plaintiff to present evidence which will establish jurisdiction." *Standard Tallow Corporation* v. *Jowdy,* 190 Conn. 48, 54, 459 A.2d 503 (1983).

The determination of jurisdiction over the defendant "requires a two-tiered consideration of (1) whether the appropriate state statute reaches the foreign corporation and (2) whether such statutory reach exceeds the constitutional 'minimum contacts' test required by due process. *International Shoe Co.* v. *Washington,* 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) . . . ."

*McFaddin* v. *National Executive Search, Inc.*, 354 F. Sup. 1166, 1168 (D. Conn. 1973); see also *Lombard Bros., Inc.* v. *General Asset Management Co.*, 190 Conn. 245, 250, 460 A.2d 481 (1983).

Initially it must be determined whether § 33-411 (c) potentially reaches the defendant. The plaintiff argues that subsections (3) and (4) apply: "Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: . . . (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers; or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance."

In determining the applicability of § 33-411 (c) (3), the court is aided by the affidavit of James Hays, customer service manager of Federal Press, submitted by the defendant. Essentially, the affidavit states that Federal Press does not solicit business, advertise or regularly make sales in Connecticut. The affidavit does state, however, that "[o]n a number of occasions, Federal Press Co. has shipped power presses to the Echlin Company after the Beisel Machinery Co. sold Federal Press Co.'s power presses to Echlin." The plaintiff also submits an affidavit in which he states that the defendant manufactured the allegedly defective press and shipped it to Connecticut. On the basis of the defendant's own

admission that it shipped presses to Echlin, the court concludes that the defendant produced, manufactured or distributed goods with the reasonable expectation that such goods would be used in Connecticut. Therefore § 33-411 (c) (3) reaches the defendant. This is not the end of the inquiry, however. Having determined that § 33-411 (c) (3) reaches the defendant, this court must next decide whether the operation of that statute comports with due process.

"[D]ue process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain *minimum contacts* with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." (Emphasis added.) *International Shoe Co.* v. *Washington,* 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945).

Essentially the plaintiff argues that minimum contacts have been established because the defendant admits to having shipped presses to Echlin on several occasions. The defendant claims that minimum contacts are not established solely by proving that a manufacturer could have foreseen that some of its products would be distributed or used in the forum state. The defendant relies heavily upon the fact that it had no direct sales relationship with Connecticut, the presses having been sold to Echlin by an intermediate company. The parties therefore raise the issue of whether the defendant's act of shipping presses into Connecticut, the defendant's sole contact with the state, satisfies the due process requirements.

Particularly instructive in answering this question is the case of *World-Wide Volkswagen Corporation* v. *Woodson,* 444 U.S. 286, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980), in which the United States Supreme Court held that jurisdiction over an out-of-state automobile

distributor is not supported by the mere fact that its product could foreseeably cause an injury in the forum state. Although *World-Wide Volkswagen* involved a distributor, the court addressed the jurisdictional test with regard to manufacturers when it stated (at pp. 297–98): "if the sale of a product of a *manufacturer* . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer . . . to serve, *directly* or *indirectly,* the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State. Cf. *Gray* v. *American Radiator & Standard Sanitary Corp.,* 22 Ill. 2d 432, 176 N.E.2d 761 (1961)." (Emphasis added.) The court stressed that although foreseeability is a factor to be considered, it is the defendant's conduct and connection with the forum state that is controlling. *World-Wide Volkswagen Corporation* v. *Woodson,* supra, 297. The court's reference to *Gray* v. *American Radiator & Standard Sanitary Corporation,* 22 Ill. 2d 432, 176 N.E.2d 761 (1961), is particularly relevant here because that case undermines the defendant's reliance on the presence of a third party vendor. "Where the alleged liability arises, as in this case, from the manufacture of products presumably sold in contemplation of use here, it should not matter that the purchase was made from an independent middleman or that someone other than the defendant shipped the product into this State." Id., 442. Therefore, the court finds that Beisel's role in selling the presses to Echlin is an insufficient basis upon which to grant the defendant's motion.

In *Shaw* v. *American Cyanamid Co.,* 534 F. Sup. 527 (D. Conn. 1982), the court reviewed several cases decided under *World-Wide Volkswagen* and concluded that jurisdiction is supported only where the record demonstrates that the defendant "knew its goods would enter the forum state either in the specific instance giving rise to the litigation or on a regular enough basis that it 'has clear notice that it is subject to suit there . . . .' " (Citation omitted.) *Shaw* v. *American Cyanamid Co.,* supra, 532. The *Shaw* court's review of *Plant Food Co-Op* v. *Wolfkill Feed & Fertilizer,* 633 F.2d 155 (9th Cir. 1980), is particularly instructive with regard to the facts of this case. In *Plant Food Co-Op* the ninth circuit held that due process is satisfied when the defendant engages in affirmative conduct to deliver its product to the forum state even though it had no contractual relationship with the ultimate purchaser. "Pillsbury engaged in affirmative conduct to deliver its product into Montana. It was not brought into the forum by the unilateral act of another party. This contact with Montana was voluntary and financially beneficial to Pillsbury. When it knew the fertilizer was bound for Montana Pillsbury could have objected or made other arrangements if it found exposure to Montana's long-arm jurisdiction unacceptable." *Plant Food Co-Op* v. *Wolfkill Feed & Fertilizer,* supra, 159.

Upon the facts of this case, the defendant engaged in affirmative conduct establishing the requisite minimum contacts necessary to support the statutory reach of § 33-411 (c) (3). The record indicates that the defendant shipped presses to Echlin on several occasions. While it is not absolutely clear that the defendant shipped the press that injured the plaintiff, such a conclusion can be reasonably inferred. Therefore, the defendant's contacts with Connecticut, while not voluminous, were specifically related to the plaintiff's cause of action. There is no question that the defendant knew

its press was destined for Connecticut. It is submitted that the act of shipping the press is enough to satisfy due process notwithstanding the fact that the press was actually sold by an intermediate company.

The defendant's motion to dismiss is denied.