Glenn **HARDY**, Plaintiff,

v.

**FORD MOTOR CAR**, et al., Defendants.

No. Civ. 3:96CV290.

United States District Court,
D. Connecticut.

June 24, 1998.

Vincent M. Musto, Michael A. Stratton, Koskoff, Koskoff & Bieder, P.C., Bridgeport, CT, for Glenn Hardy, Kristen Hardy.

James M. Campbell, Campbell, Campbell & Edwards, Boston, MA, Holly M. Polglase, Campbell, Campbell & Edwards, East Hartford, CT, for Ford Motor Co, KIA Motors.

Philip S. Walker, Mary Beth Cardin, Day, Berry & Howard, Hartford, CT, for Takata Corp.

Robert W. Littleton, Bruce Ainbinder, Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, Patrick J. Filan, James F. Biondo, Rosenblum & Filan, Stamford, CT, for Duck Boo, Inc.

### Ruling on Defendant Duck Boo's Motion to Dismiss [doc. # 32]

ARTERTON, District Judge.

The plaintiff Glenn Hardy was injured during a motor vehicle accident while driving his Ford Festiva. He brought suit against Ford, Takata, Kia Motors and Duck Boo, Inc. under Connecticut's product liability 52–240b and 52–572m–r. The Court ruled from the bench, granting the defendant Duck Boo's Motion to Dismiss, on January 14, 1998. This ruling memorializes the reasoning given by the Court orally at that time.

### Background

The Ford in question was actually designed and manufactured by Kia Motor Cars, a Korean corporation, on behalf of Ford. Duck Boo is a Korean company that supplies seat belts as a vendor to Kia Motor Cars through Takata Corporation, but has no role in the installation of the safety belts.

The affidavit of Sung Joon Lee, the managing director of Duck Boo International, states that all transactions relating to Duck Boo's sale of safety belts to Kia Motors occurred in Korea and no aspect of the relationship between Duck Boo and Kia took place in the United States. "Duck Boo had no knowledge of what would become of its safety belts after it sold them to Kia Motors, beyond the general knowledge that Duck Boo safety belts would be installed in Kia cars by Kia Motors in the Republic of Korea and some of the Kia manufactured cars would be supplied to Ford Motor Company who would sell them somewhere in the United States under the Ford brand name," (Aff. of Lee, ¶ 29). Paragraph 30 of Mr. Lee's affidavit states, "Duck Boo has no knowledge of the method of delivery of the subject automobile into the United States, and specifically into the State of Connecticut." Further, according to this affidavit, Duck Boo has never had any other contacts with the United States and, thus, with the forum State of Connecticut. Duck Boo is not licensed or registered to do business in any state in the United States; Duck Boo has never entered into any contract in the United States; Duck Boo has never transacted or solicited business in the United States; Duck

Boo does not now, and has never, owned, rented, leased any real or personal property located in any of the United States. Duck Boo does not have any distributors in any of the United States. Duck Boo does not do and has not done any advertising in any of the United States. Duck Boo has never initiated litigation in any of the United States. (Aff. of Lee).

### Legal Standards

On a motion to dismiss for lack of personal jurisdiction, it is the plaintiff who bears the burden of showing that the court has jurisdiction over the defendant. *Metropolitan Life Insurance Company v. Robertson–Ceco Corporation,* 84 F.3d, 560, at 566 (2d Cir.1996) (*quoting Ensign–Bickford v. ICI Explosives USA, Inc.,* 817 F.Supp. 1018, 1025 (D.Conn.1993)). "To survive the motion, the plaintiff must make 'a prima facie showing' through affidavits or other evidence that the defendant's conduct was sufficient for the court to exercise personal jurisdiction", *Ensign–Bickford v. ICI Explosives USA, Inc.,* 817 F.Supp. 1018, 1025 (D.Conn. 1993) (construing the reasonable expectation prong of Connecticut's long-arm statute, Connecticut General Statute 33–411(c)(3)). "After discovery, a plaintiff must submit an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant." *Combustion Engineering Inc. v. NEI International Combustion Limited,* 798 F.Supp. 100, 103 (D.Conn.1992).

In this case jurisdiction discovery has already taken place and the results of that discovery have been put before the Court in the form of exhibits that are the responses to such discovery. A district court sitting in diversity must look to the forum state to determine jurisdiction. *Arrowsmith v. United Press International,* 320 F.2d 219 (2d Cir.1963). "The exercise of long-arm jurisdiction in the state requires a two part inquiry; first, whether jurisdiction is permitted by the statute, and second, whether jurisdiction is permitted by the federal constitution." *Thomason v. Chemical Bank,* 234 Conn. 281, 295, 661 A.2d 595 (1995).

Connecticut General Statute 33–929 governs service of process on foreign corporations and apparently replaces, but does not change the earlier statutory formulation of § 33–411. In pertinent part, that statute provides under (f)(3):

> Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: ... (3) out of the production, manufacture or distribution of goods by such corporation *with the reasonable expectation that such goods are to be used or consumed in this state,* and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers; ...

(emphasis supplied). In *Thomason v. Chemical Bank* 234 Conn. 281, 295, 661 A.2d 595 (1995) the Connecticut Supreme Court explained that a plaintiff need not show that because of the act of solicitation the defendant was on notice that it might be sued by the plaintiff. A plaintiff similarly need not show that the defendant solicited his or her business in Connecticut. A plaintiff need only demonstrate that the defendant could reasonably have anticipated being hailed into court here by some person who had been solicited in Connecticut and the plaintiff's cause of action was not materially different from an action that might have resulted directly from the solicitation.

With respect to the second part of the inquiry, in order to exercise personal jurisdiction without running afoul of the Due Process Clause of the Fourteenth Amendment, a defendant must have minimum contacts with the state of Connecticut such that maintenance of the suit does not offend traditional notions of fair play and substantial justice, *International Shoe v. State of Washington,* 326 U.S. 310 at 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

The constitutional analysis is governed by a line of cases that started with *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2

L.Ed.2d 1283 (1958), in which the Supreme Court stated that the minimum-contacts standard requires "that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state." This purposeful availment requirement was further articulated in *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), where the Court held that the "mere likelihood that a product will find its way into the forum state" is insufficient to establish personal jurisdiction.

In *Burger King v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) the Court continued to hold that a defendant has minimum contacts with the forum state only if the defendant had purposefully availed itself of the advantages of conducting activities within the forum state.

The degree to which placing products into the stream of commerce suffices to meet this purposeful availment requirement is somewhat less clear after *Asahi Metal Industry v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). In *Asahi* a motorcyclist was injured when his tire exploded. He sued the Taiwanese manufacturer of the tire tube. The manufacturer in turn sued Asahi, the Japanese manufacturer of the tube's valve assembly. Asahi acknowledged that it was aware that its valve assemblies would eventually be sold in the United States, but claimed it never expected to be subject to suit in the United States, since all of its sales flowed from Japan to Taiwan.[1]

Writing for the four-justice plurality, Justice O'Connor stated that:

> [T]he "substantial connection" between the defendant and the forum state necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum state. The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state. A defendant's awareness that the stream of commerce

may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream into an act purposefully directed towards the forum state.

*Id.* at 112, 107 S.Ct. 1026. "Under this view, a plaintiff would be required to show that the defendant engaged in some 'additional conduct' directed toward the forum state—such as designing the product specifically for that state's consumers—in order to establish personal jurisdiction." *Ensign–Bickford*, 817 F.Supp. at 1029.

Here the record gives no indication that Duck Boo's efforts to conform with U.S. standards may be equated with an undertaking to design a seatbelt for Connecticut consumers. While the four justice concurring opinion or opinions indicate to varying degrees that the stream of commerce may, under certain circumstances, suffice to show a product manufacturer's awareness of where the final product is being marketed, Justice Brennan, too, appears to require awareness that the final product is being marketed in the forum state. It is this element that appears to be lacking on this record.

However, establishing the existence of minimum contacts is not the end of the inquiry. The second part of the Due Process analysis looks to whether the assertion of personal jurisdiction would comport with "traditional notions of fair play and substantial justice." *Burger King* explains that courts in appropriate cases may evaluate the burden on the defendant, the forum state's interest in adjudicating a dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of the controversies, and the shared interest of the several states in furthering substantive social policies.

■ "By requiring 'fair warning' that an individual's activities in a state may subject him to suit there, the Due Process Clause protects that person's liberty interest and 'gives a degree of predictability to the legal

---

1. On this record, there is no indication of the number of Festivas marketed in Connecticut, in contrast to the record in *Asahi* where there was some indication of the volume of products sold through the intermediary and reaching the forum state of California.

system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Metropolitan Life,* 84 F.3d at 567 (*quoting Burger King,* 471 U.S. at 471–72, 105 S.Ct. 2174). "While the exercise of jurisdiction is favored where the plaintiff has made a threshold showing of minimum contacts at the first stage of the inquiry, it may be defeated where the defendant presents 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* at 568 (*quoting Burger King,* 471 U.S. at 477, 105 S.Ct. 2174).

Keeping in mind these "reasonableness" factors used to analyze fair play and substantial justice, the burden on the defendant is assessed in terms of the significant distance between Connecticut and Korea, the existence of dissimilar legal systems (although the record here reflects specifically only the differences between the absence of a notary and sworn affidavits in Korea), and the interest of the forum state in insuring remedy for its citizen by injury caused by tort-feasors. The plaintiff's interest in obtaining relief is mitigated by the fact that Duck Boo is not the only source of relief and, in fact, none of the other defendants have challenged the Court's jurisdiction over them. While mindful of the Second Circuit's admonition in *Metropolitan Life,* that dismissal resulting from the application of the reasonableness factors should be few and far between, the Court concludes nonetheless that this defendant, under the attenuated product lineage here, remains "a good candidate for dismissal." *Metropolitan Life,* 84 F.3d at 575, considering the international context, the heavy burden on the alien defendant, the lesser interest of the forum state and the alternative remedies of the plaintiff. *See Asahi,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92.

### Conclusion

In considering all of the foregoing factors and legal analysis, it is the conclusion of the Court that under the circumstances set forth Duck Boo's motion to dismiss for lack of personal jurisdiction should be and is hereby GRANTED and Duck Boo is dismissed from this action.

**IT IS SO ORDERED.**