**Michael DIVICINO, Plaintiff,**

**v.**

**POLARIS INDUSTRIES and Central Vermont Motorcycles, Defendants.**

**No. CIV.A.3:99CV1253(CFD).**

United States District Court, D. Connecticut.

Jan. 25, 2001.

---

Gerald S. Sack, Sack, Spector & Barrett, West Hartford, CT, for Michael Divicino.

Mark J. Claflin, Howd & Ludorf, Hartford, CT, Timothy J. Mattson, Christine N. Lindblad, Bowman & Brooke, Minneapolis, MN, for Polaris Industries.

Bruce H. Raymond, Christopher J. Lynch, Melissa S. Rotenberg, Neyah K. Bennett, Halloran & Sage, Hartford, CT, for Central Vermont Motorcycles.

### RULING ON DEFENDANT'S MOTION TO DISMISS

DRONEY, District Judge.

#### Introduction

The plaintiff in this products liability action seeks damages pursuant to the Connecticut Products Liability Act, Conn. Gen. Stat. §§ 52–572m, *et seq.* The defendants Polaris Industries, Inc. ("Polaris") and Central Vermont Motorcycles ("CVM") filed the pending motion to dismiss on the basis of lack of personal jurisdiction and improper venue.

#### Background [1]

The plaintiff Michael Divicino ("Divicino") is a resident of Connecticut. The defendant CVM is incorporated under the laws of the state of Vermont and also has its principal place of business there. CVM sells recreational vehicles from its store in Rutland, Vermont.

---

**1.** The Court has gathered the recited background facts from the complaint, affidavits and other evidence submitted by the parties, as it must when rendering a decision a Fed.

R.Civ.P. 12(b)(2) motion. *See Inset Sys., Inc. v. Instruction Set, Inc.,* 937 F.Supp. 161, 163 (D.Conn.1996); *see also Hardy v. Ford Motor Car,* 20 F.Supp.2d 339, 341 (D.Conn.1998).

Divicino purchased a Polaris-brand All Terrain Vehicle ("ATV") from CVM on April 20, 1998, and used the vehicle in Connecticut and elsewhere. On July 25, 1998, while riding the ATV in Vermont, Divicino was injured when its right front tire attachment bracket failed.

Divicino brought this action against Polaris and CVM, claiming damages for multiple injuries. CVM has moved to dismiss the complaint on the basis that it is not subject to jurisdiction in Connecticut and, alternatively, that venue for this action is improper in Connecticut.[2]

*Discussion*

### I. Motion to Dismiss Based on Lack of Personal Jurisdiction

#### A. Fed.R.Civ.P. 12(b)(2) Standards

When a defendant challenges personal jurisdiction in a motion to dismiss, the plaintiff bears the burden of showing through actual proof that the court has jurisdiction over the defendant. *See Hardy v. Ford Motor Car,* 20 F.Supp.2d 339, 341 (D.Conn.1998); *see also Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 566–67 (2d Cir.1996); *Ensign–Bickford Co. v. ICI Explosives USA, Inc.,* 817 F.Supp. 1018, 1026 (D.Conn.1993). That is, the plaintiff must make a *prima facie* showing through affidavits and other evidence that the defendant's conduct was sufficient for the court to exercise personal jurisdiction. *See Hardy,* 20 F.Supp.2d at 341 (citations omitted). In ruling, the court must resolve all doubts in favor of the plaintiff, regardless of controverting evidence submitted by the defendant. *See United States Surgical Corp. v. Imagyn Medical Technologies, Inc.,* 25 F.Supp.2d 40, 44 (D.Conn.1998).

"The amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accor-

dance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee." *Metropolitan Life Ins.,* 84 F.3d at 576; *see also Jazini v. Nissan Motor Co.,* 148 F.3d 181, 183–84 (2d Cir.1998). The court in *Metropolitan Life Ins.* also stated:

> [I]n resolving questions of personal jurisdiction in a diversity action, a district court must determine conduct a two-part inquiry. First, it must determine whether the plaintiff has shown that the defendant is amenable to service of process under the forum state's laws; and second it must assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process.

84 F.3d at 576.

#### B. Facts Concerning Personal Jurisdiction Over CVM

CVM has presented an affidavit from Hal Coughlin, the owner and president of CVM, in support of its motion to dismiss in which Mr. Coughlin states, *inter alia,* the following uncontested facts[3] with respect to CVM's relationship to Connecticut: CVM is not licensed to do business in Connecticut and does not own or lease property in this state; CVM does not have any agents or employees in Connecticut and has not appointed an agent to accept service on its behalf in Connecticut; it has never paid taxes or fees in Connecticut and it has never been listed in a Connecticut telephone book; CVM does not have members of a marketing or sales force in Connecticut, nor does it have merchandise suppliers in this state; it does not have any bank accounts in Connecticut, nor does it have any business dealings with Connecticut financial institutions; finally, CVM

---

**2.** The defendant Polaris answered the complaint and does not challenge personal jurisdiction or venue.

**3.** These facts are uncontested in the sense that the plaintiff has either agreed that the facts exist or has failed to submit evidence to the contrary.

does not advertise in any national publications. Further, CVM also has produced evidence of a Polaris web site on which the plaintiff claims he relied when he decided to purchase his ATV from CVM.

Plaintiff Divicino has submitted the following evidence concerning CVM's contacts with Connecticut. In an affidavit submitted in opposition to the motion to dismiss, Divicino states that at the time he purchased the ATV, "a person who identified himself as the owner of the business and whom I believe to be Hal Coughlin ... stated that a significant number of his sales are to Connecticut residents who travel to Vermont for snow conditions and equipment not available in Connecticut." Divicino further submitted a portion of Coughlin's deposition testimony in which he testified that Connecticut customers comprised "less than one percent" of CVM's annual sales, and that CVM may have delivered merchandise via truck to Connecticut purchasers in the past. At oral argument, Divicino also emphasized the close proximity of Connecticut to Vermont and Vermont's reputation as a vacation destination for Connecticut residents as facts weighing in favor of exercising jurisdiction over CVM under the Connecticut long-arm statute.

Divicino also has provided evidence of advertising that CVM allegedly directed towards Connecticut residents. In his affi-

davit, he states that he learned of CVM from several sources, including a Polaris-maintained web site and various cooperative advertisements placed by Vermont Polaris dealers (including CVM) in the Vermont Area Snow Travelers ("VAST") News, a recreational association newsletter distributed to VAST members, like Divicino, throughout New England. The affidavit of Lauri Thomas, a VAST employee, indicates that the VAST News is distributed seven or eight times a year to a readership that includes approximately 4,790 Connecticut residents. Finally, Divicino has submitted photocopies of CVM's advertisements in VAST, as well as CVM's own web page.[4] Divicino did not submit evidence of the Polaris-maintained web site. However, the defendant has produced copies of some of the site's pages.[5] The site contains a "Dealer Locator" service that allows visitors to enter their zip codes, or their town and states of residence. The service then indicates which Polaris dealer is nearest them.

### C. Application of the Connecticut Long–Arm Statute

The relevant statutory provision for purposes of the Court's analysis is Conn. Gen. Stat. § 33–929(f)(3).[6] The plaintiff argues that there is evidence of distribution of merchandise by CVM to Connecticut resi-

---

4. It is not clear whether Divicino actually accessed CVM's web site before he decided to purchase his ATV. This web site, available at http:// www.webk.com/centralvtmotorcycles/ home.html, can be accessed through another site maintained by a local radio station.

5. The web site is accessible at http://www.polarisindustries.com.

6. In its memorandum in support of its motion to dismiss, CVM argued that Conn. Gen.Stat. § 52–59b is the relevant jurisdictional statute. That jurisdictional statute generally applies to nonresident defendants. *See* Memorandum of Law in Support of the Defendant's Motion to Dismiss, at 5. However, in its reply brief and at oral argument, CVM agreed that Conn. Gen.Stat. § 33–929(f), which specifically applies to foreign corporations, is the relevant

long-arm statute. *See* Defendant's Memorandum of Law in Reply to Plaintiff's Opposition to Motion to Dismiss, at 1.

In making their arguments under § 33–929(f), both parties indicated that Conn. Gen. Stat. § 33–929(f)(2) is also relevant, in addition to 33–929(f)(3). This provision–(f)2–states that a foreign corporation is subject to suit in Connecticut on any cause of action arising "out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state." However, the Court expresses no opinion as to whether CVM's activities also brings it within the reach of § 33–929(f)(2), but, as indicated in the text, finds jurisdiction on the basis of (f)(3).

dents sufficient to subject CVM to jurisdiction under that provision.

■■■■ The Connecticut Long–Arm Statute provides, in relevant part, that

[e]very foreign corporation shall be subject to suit in [Connecticut], by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: ... (3) *out of the* production, manufacture or *distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold* or whether or not through the medium of independent contractors or dealers....

Conn. Gen.Stat. § 33–929(f) (emphasis added). Under this provision, a plaintiff need not show that the defendant was on notice that it might be sued by the particular plaintiff. *See Goldstein v. Nutrition Now, Inc.,* No. X02CV 960150429S, 1999 WL 701825, at *7 (Conn.Super. Aug. 23, 1999) (quotations omitted) (emphasis added) (citing *Thomason v. Chemical Bank,* 234 Conn. 281, 661 A.2d 595, 599 (1995)); *see also Hardy v. Ford Motor Car,* 20 F.Supp.2d 339, 343 (D.Conn.1998) (citing *Thomason, supra* ). Rather, a plaintiff must demonstrate (1) that the defendant could reasonably have anticipated being brought into court in Connecticut by a person who had used goods that it had distributed with the reasonable expectation that they would be used in Connecticut, and (2) that the plaintiff's cause of action is not materially different from an action that might have resulted directly from that use. *See Goldstein,* 1999 WL 701825, at *7 (citing *Thomason,* 661 A.2d at 599). It is not

necessary for the plaintiff to show that the goods were actually sold in Connecticut. *See Coates v. Rolscreen Co.,* No. 91–330146, 1993 WL 541630, at *2 (Conn.Super.Ct. Dec. 15, 1993).

In applying § 33–929(f)(3) and its predecessors, Connecticut courts have indicated that a foreign corporation may be subject to long-arm jurisdiction based on a limited number of sales to Connecticut residents. In *Simeone v. Federal Press Co.,* 40 Conn. Supp. 173, 485 A.2d 587, 588 (1984), for example, the plaintiff brought a products liability action against the defendant for injuries sustained while operating an allegedly defective pressing machine. The court concluded that long-arm jurisdiction was properly asserted over the defendant, a foreign corporation that had manufactured the machine and distributed it to another entity that later sold it to a Connecticut employer.[7] In *Simeone,* the court based its decision on a record similar to this case, as the court relied on the affidavit of the defendant's customer service manager which contained statements similar to those made by Coughlin. The sales manager indicated that although the defendant did not solicit business, advertise or regularly make sales in Connecticut, on a number of occasions it had shipped power presses to a machinery company that sold them to the Connecticut employer. *See Simeone,* 485 A.2d at 588. The court concluded that on the basis of the defendant's admission that it shipped presses to the Connecticut employer, "the defendant produced, manufactured or distributed goods with the reasonable expectation that such goods would be used in Connecticut ... [and] § 33–411(c)(3) reaches the defendant." *Id.*

Similarly, the district court in *Bull v. Asbestos Corp.,* Civ.Nos. H–82–463 to H–82–468 and H–82–739, 1984 WL 7957, at *2 (D.Conn. May 25, 1984), concluded that the same statutory provision applied to the

---

7. *Simeone* was decided under Conn. Gen.Stat. § 33–411(c)(3), the identical predecessor to

Conn. Gen.Stat. § 33–929(f)(3). *See Hardy,* 20 F.Supp.2d at 341.

conduct of the defendant, a Canadian corporation, and brought it within the jurisdiction of Connecticut. The plaintiffs in *Bull* alleged that the defendant sold asbestos ore to the plaintiffs' employer in Stratford, Connecticut, where the plaintiffs were exposed to the asbestos and injured as a result. *See Bull,* 1984 WL 7957, at *2. The defendant's only contact with Connecticut was its sale of asbestos ore F.O.B. in Canada to the plaintiff's Connecticut employer. The district court based its decision that the defendant's conduct was sufficient to subject it to personal jurisdiction under Conn. Gen.Stat. § 33–929(f)(3) on the following facts: (1) the defendant sold the ore directly to a corporation located in Connecticut; (2) the ore had been used in Connecticut; and, (3) the affidavit in support of the defendant's motion to dismiss did not state that the defendant did not expect the ore to be used in Connecticut. *See Bull,* 1984 WL 7957, at *2 and fn. 3. The district court also concluded, based on these facts, that the defendant should reasonably have expected that the Connecticut corporation would use the ore in Connecticut. *See Bull,* 1984 WL 7957, at *2. *See also In re Connecticut Asbestos Litigation,* 677 F.Supp. 70, 75 (D.Conn. 1986) (same analysis and result).

■ In the instant case, the plaintiff has produced sufficient proof to subject CVM to jurisdiction in Connecticut under Conn. Gen.Stat. § 33–929(f)(3). First, Divicino has demonstrated that CVM could reasonably have anticipated facing litigation in Connecticut by a Connecticut purchaser of an ATV that it distributed. *See Goldstein,* 1999 WL 701825, at *7. Coughlin's deposition indicates that although Connecticut residents comprise less than one percent of his customers, he has sold and may have delivered merchandise to

Connecticut residents in the past, as did the defendant in *Simeone,* who stated that he sold presses to Connecticut "on a number of occasions." Divicino also explained that at the time he purchased his ATV, "a person who identified himself as the owner of the business and whom I believe to be Hal Coughlin ... stated that a significant number of his sales are to Connecticut residents who travel to Vermont for snow conditions and equipment not available in Connecticut." [8] Moreover, multiple sales are not required for a court to find that a defendant had a reasonable expectation that its product would be used in Connecticut. *See Bull,* 1984 WL 7957, at *2. Thus, these statements indicate that CVM distributed its ATVs with a reasonable expectation that they would be used in Connecticut.[9] Based on this expectation, CVM could have reasonably anticipated being brought into court in Connecticut by someone who had purchased one of its ATVs. This is further supported by Connecticut's close proximity to Vermont and Vermont's reputation as a vacation destination for Connecticut residents. *Cf. Murphy v. Keenan,* 667 A.2d 591, 595 (Me.1995) (proximity of New Hampshire boat retailer to Maine was relevant to court's consideration of personal jurisdiction; however, in the absence of evidence indicating that the retailer served a market in Maine, proximity alone was insufficient to subject the retailer to personal jurisdiction in Maine.)

■ Second, although the injury here occurred in Vermont, Divicino's cause of action is not materially different from an action that might have directly resulted from the use of one of CVM's vehicles in Connecticut. *See Goldstein,* 1999 WL 701825, at *7. The use that resulted in the injury, as demonstrated by the record, was

**8.** It is not clear whether Coughlin was aware that Divicino was a Connecticut resident when he made this statement. In his deposition, Coughlin indicated that although he tries to "meet[] and greet[] most of the people that come into the store," he cannot recall meeting Divicino. *See* Coughlin Dep. at 32.

**9.** This expectation is corroborated by CVM's advertisements in the VAST News and on the Internet. For example, CVM lists a toll free number on its web page with the words "Good in N.Y. State & all of New England" displayed underneath it.

the same as if it had taken place in Connecticut.

CVM's advertising further indicates that it had a reasonable expectation that the ATVs they distributed would be used in Connecticut.[10] For instance, CVM's web site includes a toll free number that is "Good in N.Y. State & all of New England." In addition, like other Polaris dealers, it has participated in cooperative advertisements[11] that appeared in the VAST News, a newsletter whose readership includes almost 5,000 Connecticut residents.[12] This advertising suggests that CVM knew that some of its customers were Connecticut residents. Thus, CVM reasonably expected that some of the ATVs that it distributed would be used in Connecticut.

Based on these facts, the distribution of merchandise by CVM (including the ATV in question) to Connecticut residents in Vermont (including Divicino) and its subsequent use in Connecticut provides an adequate basis to assert long-arm jurisdiction over CVM under Conn. Gen.Stat. § 33–929(f)(3).

**10.** It should again be noted that the Court does not express an opinion as to whether the evidence of solicitation alone would be sufficient to sustain a finding of personal jurisdiction under § 33–929(f)(2). However, CVM's advertisements provide additional support indicating that CVM reasonably expected its goods to be used in Connecticut.

**11.** The dealers and the manufacturer, Polaris, typically share in the cost of these advertisements. *See* Coughlin Dep. at 15–17.

**12.** The defendants claim that the VAST advertisements and the Polaris and CVM web sites should not be considered as evidence of jurisdiction under the Connecticut statute because Divicino has not provided sufficient proof that they existed prior to the sale of the ATV at issue in this case. However, Divicino states in his affidavit that he relied on both the advertisements and the Polaris web page when making his decision to buy his ATV from CVM. *See* Divicino Aff. at ¶ 12. Given that courts must resolve all doubts in favor of the plaintiff when deciding issues of personal jurisdiction, *see Imagyn Medical Technologies,*

**D. Due Process Considerations**

■ After applying Connecticut's long-arm statute,

The court must next determine whether the statutory reach of the long arm statute violates constitutional due process. Under the due process standard, a nonresident must have 'minimum contacts' with the forum state. To have these minimum contacts, a defendant must purposefully avail himself of the privileges and benefits of the forum state.... [T]he defendant's conduct and connection with the forum state should be such that he should reasonably anticipate being haled into court there.

*Imagyn Medical Technologies, Inc.,* 25 F.Supp.2d at 44–45 (internal quotation marks and citations omitted). Due process further requires that the defendant be given "fair warning" that its activities in a state may subject it to suit there. *See Metropolitan Life Ins.,* 84 F.3d at 567.

**1. Purposeful Availment**

■ The placement of a product in the stream of commerce, without more, does not constitute an act of purposeful avail-

*Inc.,* 25 F.Supp.2d at 44, this Court will assume that both the VAST advertisements and the Polaris web site existed prior to Divicino's purchase of the ATV.

Although Divicino does not state in his affidavit that he relied upon the CVM web page, it is nevertheless relevant. The web page bears a copyright date of 1998. Divicino purchased his ATV from CVM and had the discussion with Mr. Coughlin on or about April 20, 1998. This information suggests that CVM reasonably anticipated distributing merchandise to customers residing throughout New England, including Connecticut, at the time it sold the ATV to Divicino. At the very least, it shows that this web site was operational prior to the commencement of this action. *See Metropolitan Life Ins.,* 84 F.3d at 569 (stating that in general jurisdiction cases, courts should assess minimum contacts up to and including the time that the suit is filed); *Greene v. Sha–Na–Na,* 637 F.Supp. 591, 595 (D.Conn.1986) ("It is well established that jurisdiction is to be determined by examining the conduct of the defendants as of the time of service of the complaint.").

ment. *See Edberg v. Neogen Corp.*, 17 F.Supp.2d 104, 112 (D.Conn.1998) (citing *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)). Instead, a court must look to evidence of other conduct by the defendant that indicates "an intent or purpose to serve the market in the forum State." *Id.* For example, the defendant may have advertised in the forum, designed its product for the forum's market, or established channels for providing information for customers within the forum. *See id.; Miller v. Meadowlands Car Imports, Inc.*, 822 F.Supp. 61, 65 (D.Conn. 1993) (holding that a New Jersey car dealership's advertisements in the New York Times were not enough to warrant jurisdiction in Connecticut because they were not directed at Connecticut). In assessing these contacts, the focus of the inquiry is on "the relationship among the defendant, the forum, and the litigation," *Nielsen v. Sioux Tools, Inc.*, 870 F.Supp. 435, 440 (D.Conn.1994) (quoting *Rush v. Savchuk*, 444 U.S. 320, 327, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980)), and its outcome rests upon "the totality of the circumstances." *Combustion Eng'g, Inc. v. NEI Int'l. Combustion, Ltd.*, 798 F.Supp. 100, 105 (D.Conn.1992).

A defendant's Internet web site may serve as a basis for a finding of purposeful availment in some cases. *See, e.g., Inset Systems, Inc. v. Instruction Set, Inc.*, 937 F.Supp. 161, 164 (D.Conn.1996) (finding minimum contacts where the defendant's domain address allegedly infringed on plaintiff's trademark). However, an Internet presence alone may not satisfy the requirements of minimum contacts and due process. *See Edberg v. Neogen Corp.*, 17 F.Supp.2d 104, 115 (D.Conn.1998). "Creating a site, like placing a product into the stream of commerce, may be felt nationwide-or even worldwide-but, without more, it is not an act purposefully directed towards the forum state." *Id.* at 114 (*quoting Hearst Corp v. Goldberger*, No. 96 Civ. 3620(PLK)(AJP), 1997 WL 97097, at *16 (S.D.N.Y.1997)). Instead, there must be additional evidence of purposeful availment, such as evidence showing that Connecticut users accessed the site, that they purchased products based on the web site advertisement, or that the web site advertisement was directed at Connecticut more so than anyplace else in the nation. *See id.*

■ In the instant case, the plaintiff has presented evidence indicating that CVM did more than simply place its product in the stream of commerce. First, it participated in the cooperative advertisements in the VAST News. While the format of these advertisements vary, they generally include names, phone numbers, and other information for several Vermont Polaris dealers, including CVM. Second, CVM advertises on the Internet: it is listed on the Polaris web site as a Polaris dealer, and it maintains its own web page in conjunction with a Vermont radio station, WEBK.[13] WEBK's web site provides information about events and activities in central Vermont, as well as links to local businesses serving the area. Again, notably, CVM's web site states that its toll free number is "Good in N.Y. State & all of New England."

Alone, each form of advertising may not be sufficient evidence of purposeful availment. *See Edberg*, 17 F.Supp.2d at 115; *Miller*, 822 F.Supp. at 65. However, in this case, there is evidence that CVM directed these advertisements towards Connecticut residents. *See Edberg*, 17 F.Supp.2d at 115. Coughlin stated he was aware that the VAST News was distributed to readers outside of Vermont. Similarly, the phone number listed on CVM's web site indicates that the company expected its site to be accessed by potential

---

**13.** It is possible to access CVM's own web site in two ways: (1) enter its full address, http://www.webk.com/centralvtmotorcycles/ home. html, or (2) access the web site of the Vermont radio statute WEBK, available at http://www.webk.com, and then click on "Virtual Mall," "Sports Shops," and finally "Central Vermont Motorcycles."

customers throughout New England. The site's association with WEBK's informational web page, a site which appears to be directed towards tourists as well as Vermont residents, suggests that CVM was targeting customers in nearby states. Finally, Divicino, a Connecticut resident, stated that he accessed the Polaris web site in anticipation of his purchase. Thus, when the advertisements and web sites are considered in their totality, *see Combustion Eng'g, Inc.*, 798 F.Supp. at 105, they demonstrate that CVM was reaching out to customers in New England states other than Vermont, albeit with some assistance from Polaris. By utilizing print and electronic media sources likely to be accessed by people in the northeastern United States, CVM targeted individuals in a limited geographic area which included Connecticut.

Further, Mr. Coughlin's statements regarding sales and deliveries to Connecticut residents indicate that CVM considered Connecticut to be a significant market for its vehicles. It sold merchandise to Connecticut residents in addition to Divicino; his purchase as a Connecticut resident was not merely a "tenuous contact." *See O'Neil v. West Yellowstone Snowmobile Rentals, Inc.*, No. 96–4190, 1997 WL 178821, at *3 (E.D.La. April 11, 1997) (holding that statutory and due process jurisdictional requirements were not met where the defendant's only contact with the forum state involved its charging the plaintiff for the cost of a snowmobile damaged in a snowmobiling accident). Moreover, Coughlin stated that he knew that some of CVM's sales were to residents of Connecticut. The fact that only a small number of CVM's customers are Connecticut residents is not dispositive, as courts have found sufficient contacts even when a very small percentage of a defendant's sales are to residents of the forum state, when considering other evidence as well. *See, e.g., Northwestern Corp. v. Gabriel Manuf. Co., Inc.*, No. 95 C 2004, 1996 WL 73622 (N.D.Ill. Feb. 16, 1996) (explaining that in-state sales of one to two percent of

defendant's gross annual revenue are adequate for a finding of personal jurisdiction). *But cf. Okin v. Jiminy Peak, Inc.*, No. CV–94–4330, 1995 WL 116277, at *3 (E.D.N.Y. Feb. 24, 1995) (sales of certificates and coupons in New York were not sufficient to subject the defendant, a Massachusetts corporation, to jurisdiction under New York law when those sales amounted to only 0.4 percent of the defendant's revenue and when the defendant had no control over their distribution).

Together, these factors indicate that CVM had minimum contacts with Connecticut sufficient to support of finding of purposeful availment. Divicino therefore has provided sufficient proof of CVM's minimum contacts with Connecticut.

### 2. Traditional Notions of Fair Play and Substantial Justice

In addition to minimum contacts, "the court must consider these contacts in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *Ensign–Bickford Co.*, 817 F.Supp. at 1030; *see also Metropolitan Life Ins.*, 84 F.3d at 568. That is, the Court must determine whether the assertion of personal jurisdiction "is reasonable under the circumstances of the particular case." *Metropolitan Life Ins.*, 84 F.3d at 568 (citing *International Shoe Company v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). As part of its "reasonableness" analysis, the Court must consider:

(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of justice of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest

of the states in furthering substantive social policies.

*Metropolitan Life Ins.*, 84 F.3d at 568.

The exercise of personal jurisdiction over CVM in Connecticut must also be reasonable when considered in light of the factors set forth in *Metropolitan Life Ins.*, 84 F.3d at 568.

■ First, subjecting CVM to jurisdiction will not impose a significant burden, given the relative close proximity of Vermont and Connecticut. *See Hardy*, 20 F.Supp.2d at 343 (considering location of alien's place of residence and unreasonable burden of having to travel great distance to take part in action); *Inset Systems, Inc. v. Instruction Set, Inc.*, 937 F.Supp. 161, 165 (D.Conn.1996) (using the minimal distance between Massachusetts and Connecticut as one factor in support of its finding of minimal contacts). Further, Connecticut has a strong interest in adjudicating a personal injury action involving one of its own citizens where the claimed injury was caused, in part, by a defendant who purposefully distributes merchandise to Connecticut residents. *See Hardy*, 20 F.Supp.2d at 343 (forum state has an interest in providing a remedy to one its citizens who is injured by a foreign tortfeasor). Connecticut has an interest where, as here an action concerns issues of state statutory law, in this case, Connecticut's products liability statute. *See Inset Sys.*, 937 F.Supp. at 165. Finally, as a resident of Connecticut, Divicino has an interest in obtaining convenient and effective relief in this state. *See Metropolitan Life Ins.*, 84 F.3d at 568. Thus, the Court's finding of minimum contacts comports with notions of fair play and substantial justice.

The assertion of personal jurisdiction over CVM pursuant to Conn. Gen.Stat. § 33–929(f)(3) does not violate constitutional due process. Accordingly, the defendant's motion to dismiss for lack of personal jurisdiction is denied.

## II. *Motion to Dismiss Based on Improper Venue*

CVM also moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(3) on the basis that venue is improper in Connecticut.

### A. Venue Under 28 U.S.C. § 1391(a)

■ The complaint alleges diversity jurisdiction under 28 U.S.C. § 1332; therefore, the venue statute applicable to this action is 28 U.S.C. § 1391(a), which provides:

> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). 28 U.S.C. § 1391(c) states that, for venue purposes, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. *See* 28 U.S.C. § 1391(c). *See also Laumann Manufacturing Corp. v. Castings USA, Inc.*, 913 F.Supp. 712, 719 (E.D.N.Y.1996) (same). "Essentially section 1391(c) 'equates jurisdiction with venue for corporate defendants.'" *Id.* (citing *Dave Guardala Mouthpieces, Inc. v. Sugal Mouthpieces, Inc.*, 779 F.Supp. 335, 337 (S.D.N.Y. 1991)). Therefore, if the Court concludes that both defendants are subject to jurisdiction in this district, then they both "reside" here (within the meaning of section 1391(c)) and, therefore, venue is proper here. *See e.g. Mountbatten Surety Co., Inc. v. Reagerharris, Inc.*, No. Civ.A. 99–3052, 2000 WL 39063, at * 9 (E.D.Pa.

Jan.19, 2000); *Topliff v. Atlas Air, Inc.,* 60 F.Supp.2d 1175, 1179 (D.Kan.1999); *Regent Lighting Corp. v. Galaxy Electrical Manufacturing,* 933 F.Supp. 507, 512–513 (M.D.N.C.1996); *Laumann Manufacturing Corp.,* 913 F.Supp. at 719; *Executive Aircraft Consulting, Inc. v. Towers Financial Corp.,* Civ.A.No. 91–1357–B, 1992 WL 402032, at * 2 (D.Kan. Dec. 1, 1992). The fact that venue may be proper in another district does not make venue in the District of Connecticut improper because venue may be properly laid in more than one district. *See, e.g., Bridgeport Machines Inc. v. Alamo Iron Works, Inc.,* 76 F.Supp.2d 214, 215 (D.Conn.1999).

**B. The Instant Case**

 Given that CVM is subject to personal jurisdiction in Connecticut, *see* section I, *supra,* CVM also resides in Connecticut within the meaning of 28 U.S.C. § 1391(c).

Polaris also resides in Connecticut within the meaning of 28 U.S.C. § 1391(c). Polaris admitted in its answer that it "distributed products its products in the State of Connecticut and it knew and/or reasonably expected that its products would be purchased by Connecticut residents." Additionally, although in its answer Polaris did not admit Divicino's allegation that the ATV in question was used in Connecticut (as required to assert jurisdiction under Conn. Gen.Stat. § 33–929(f)(3)) based on the discussion in section I(B)(1) *supra,* it is apparent that other CVM customers used their ATVs in Connecticut. On this basis, the Court concludes that Polaris, like CVM, resides in Connecticut because it is subject to personal jurisdiction here pursuant to Conn. Gen.Stat. § 33–929(f)(3). Accordingly, because both defendants are subject to personal jurisdiction in Connect-

icut, venue is proper here pursuant to 28 U.S.C. § 1391(a)(1).

The defendant argues that venue is improper under § 1391(a)(2) because the accident at issue did not occur in Connecticut, and under § 1391(a)(3) because this action might also be brought in the District of Vermont. However, based the Court's conclusions that venue is proper in Connecticut and that § 1391(a)(1) is satisfied, the Court need not address whether venue may properly be laid in another district under the other two prongs of the statute. *See Bridgeport Machines,* 76 F.Supp.2d at 215. The defendant's motion to dismiss on the basis of improper venue is denied.[14]

### *Conclusion*

Accordingly, the defendant's motion to dismiss [**Doc. # 11**] is **DENIED**.

---

14. CVM also requests that the Court transfer this action to the U.S. District Court for the District of Vermont in the event the motion to dismiss is denied. However, CVM failed to provide any argument or legal authority to support this request and Divicino, similarly, did not argue the point or submit contrary

legal authority. Accordingly, the Court expresses no opinion as to whether a transfer of this case to the District of Vermont is warranted. However, this ruling is without prejudice to either Polaris or CVM filing a motion to transfer with an accompanying memorandum of law.